Shank, Appellant, *v.* Consolidation Coal Company.

Argued April 25, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*David L. Ullman,* with him *W. Curtis Truxal,* for appellant.

*Charles H. Ealy,* with him *Uhl, Ealy and Uhl,* for appellee.

OPINION BY RENO, J., July 17, 1947:

Conceding that the accident was compensable, the employer denied only liability for the physicians' bills. Upon that point the referee and the board found against the employer, and awarded compensation which included the disputed bills. The court below reversed the board, and the case is here upon the claimant's appeal.

No objection has been lodged against the findings of fact, and the factual issues having been resolved in claimant's favor the record must be read in the light most favorable to him. *Yaklich v. Union Collieries Co.,* 158 Pa. Superior Ct. 55, 43 A. 2d 591.

On October 23, 1944, at 9:30 P. M., while working in the employer's coal mine, claimant was struck on his right foot by a jack pipe. Fellow-workmen helped him out of the mine and took him to the company's physician, Dr. F. W. White. The doctor made no inquiry as to how the injury occurred, and merely bathed the foot in hot water, applied a mercurochrome pad, bandaged it, and sent claimant to his home seven miles away with instructions to bathe the foot in hot water and return to work in two days. That night claimant's condition worsened, intense pain prevented sleep. He lived alone, and had no telephone, and the next morning he crawled to the window and called to a neighbor who sent for his sister. She summoned the family physician, Dr. E. O. Haupt, who arrived at 9 A. M., and found the injured member in a serious condition. The foot was "quite edematous, quite a lot of hematoma, evidence of internal bleeding at that time, and pain, continuing pain with it." Dr. Haupt immediately took claimant to the hospital.

When claimant arrived there, it was discovered that his leg was swollen and discolored and gentle manipulation produced considerable pain. X-rays disclosed a longitudinal fracture of the fibula and of the lower third of the tibia extending into the joint, a transverse fracture

of the malleolus, all of them complete and extending through the bone cortex at both ends. Dr. Haupt called in an orthopedic surgeon, Dr. H. E. Musser, who read the x-rays and assisted in the treatment. A cast was applied, and on November 4th claimant left the hospital. On January 24, 1945, he returned to work without disability.

The case is free from contentions concerning the method of treatment or the amount of the fees. The sole objection to the claim is that claimant refused to allow the employer to furnish medical services within the meaning of the Workmen's Compensation Act of June 21, 1939, P. L. 520, §306 (f),[1] in force at the time of the accident.

The alleged refusal of claimant is based upon these facts: On the afternoon of the day when claimant was admitted to the hospital and after the x-rays had been taken, the leg dressed and splint applied, Dr. White saw claimant who reminded him that he was the man who had been hurt in the mines the night before and told him that Dr. Haupt had brought him in. The next day the employer's compensation manager offered claimant the services of Dr. White or a Dr. Barchfield. The claimant told him he wished to retain the doctors who were treating him. This was predicated not only upon their satisfactory service but also upon claimant's prior

---

[1] The text of the Act of 1939, supra, is not printed in Purdons Statutes or the current pocket parts. Section 306(f), so far as is here pertinent, provided: "During the first sixty days after disability begins, the employer shall furnish *reasonable* surgical and medical services, medicines, and supplies, *as and when needed, unless the employe refuses* to allow them to be furnished by the employer. The cost of such services, medicines, and supplies shall not exceed one hundred and fifty dollars ($150). If the employer shall, *upon application made to him*, refuse to furnish such services, medicines, and supplies, the employe may procure same and shall receive from the employer the reasonable cost thereof within the above limitations." (Emphasis added).

unfortunate experience with Dr. White. In a mine accident a year before a hole had been punched in claimant's arm and his two fingers and thumb were numbed. Dr. White treated him for a week but the arm remained painful, and he consulted Dr. Haupt who found that a severed nerve had caused an infection. Dr. Haupt opened the arm, sutured the nerve, applied a cast, and claimant fully recovered. Did claimant's action bar recovery for the medical bills?

The answer is supplied by *Nury v. Consumers Mining Co.,* 159 Pa. Superior Ct. 373, 376, 377, 48 A. 2d 87, decided after the learned judge had filed his opinion in the court below. Upon facts not stronger than those now before us we held that the obligation of the employer to furnish reasonable surgical and medical services is not fulfilled by furnishing inadequate professional service. President Judge BALDRIGE said: "We do not hold that an employer's doctor must be infallible in determining the nature and extent of an employe's injury or ailment, but he should make such an examination, and exercise such professional skill, as is reasonably required." Of the physician in that case, it was said that he ". . . made but superficial examinations, and treated lightly a serious condition", and added: "An employe in such circumstances is not required to continue suffering pain and remain incapacitated without seeking other medical advice. If the employer's doctor is shown to be completely mistaken in his diagnosis and treatment, an injured employe will not be deprived of his rights to have the services of a reasonably competent medical man, in compliance with the spirit of our statute."

What was there said applies with equal relevance to this case. Certainly to a layman it would seem that the initial examination of an injured man brought into a physician's presence by two co-workers, in itself indicating a serious condition, would call for more than a

superficial inspection of the injured member. His advice to bathe the foot and to return to work within two days evidences failure to diagnose the extent of the injury, or to realize its inherent possibilities. An infallible judgment cannot be expected, but only a cursory examination is not a reasonable medical service. Although Dr. White testified, there is nothing in the record to dispel the impression that he "treated lightly a serious condition". True, he testified that he intended to take an x-ray, but he did not reveal his intention to his patient, and had no contact with him until he saw him in the hospital. Claimant was confronted with an emergency when he summoned Dr. Haupt, and his preference for his family physician is readily understandable. His previous experience with Dr. White, which the latter did not deny, must be taken into account, and the record fully sustains the board's comment: "We have quoted the first sentence of the section [section 306 (f)] because we wish to call attention to the word 'reasonable.' The dictionary synonyms of this word are 'equitable, fair, moderate or tolerable' and we do not think that the claimant could expect such care as could be so described if he continued with the medical services provided by the defendant considering the intolerable experiences he had already suffered because of it."

Appellant claims interest on the award. His able counsel, who has had practical experience in the administration of the statute, frankly advised us that it has not been the custom to allow interest upon awards for medical services, but argues that medical service is compensation, and therefore interest upon it should follow. We have already held that the word "compensation", as employed in various sections of the Workmen's Compensation Act and the Occupational Disease Act, includes medical services. *Haley v. Matthews,* 104 Pa. Superior Ct. 313, 158 A. 645; *Staller v. Staller,* 144 Pa. Superior Ct. 83, 18 A. 2d 537. Moreover, even before

the enactment of the Act of April 13, 1927, P. L. 186, which was the first act to allow interest, we held that compensation awards bore interest. *Kessler v. N. Side Pack. Co.*, 122 Pa. Superior Ct. 565, 186 A. 404. It follows that under the construction heretofore placed upon the statutes an award for medical expenses carries interest from the day the claim is presented. Act of June 21, 1939, P. L. 520, section 410, 77 PS 751.

Judgment reversed, and the record is remitted to the court below to enter a judgment in favor of claimant and against defendant for the medical services with interest.