Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania and William H. Collier *v.* Overmyer Mold Company and American Mutual Insurance Companies, Appellants.

Argued May 9, 1975, before Judges Kramer, Mencer and Rogers, sitting as a panel of three.

*Herbert Grigsby,* with him *Ralph A. Davies,* and *Thomson, Rhodes & Grigsby,* for appellant.

*William H. Collier and James N. Diefenderfer,* for appellees.

*John D. Killian,* with him *Thomas W. Scott* and *Killian & Gephart,* for amicus curiae, Life Fellowship of Pennsylvania.

Opinion by Judge Rogers, July 25, 1975:

This is an appeal by the Overmyer Mold Company and its insurance carrier, from the decision of a referee, affirmed by the Workmen's Compensation Appeal Board, directing the employer to reimburse a workmen's compensation claimant, Mr. William H. Collier, the sum of $210 for medical services furnished by a chiropractor.

The facts are not in dispute. Mr. Collier suffered a compensable back injury on November 17, 1972. He first sought the medical attention of one Dr. Joseph Testa, a physician designated by his employer, pursuant to section 306 (f) of the Workmen's Compensation Act,[1] *as amended*

---

1. Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1 et seq.

by Section 12 of the Act of March 29, 1972, P.L.    , No. 61, 77 P.S. §531. Believing that Dr. Testa was not alleviating his symptoms, the claimant procured 30 treatments by a chiropractor. Before consulting the chiropractor, the claimant conferred with his employer's personnel manager who testified that he told Mr. Collier that the employer could not prevent his going to a chiropractor but that "he must understand that bills might or might not be paid. Past indications are if 1, 2, 3 visits are given . . . there is generally no . . . objection. However, any [thing] more than that there is mostly an objection."

This is the first case in which we have been called upon to decide the meaning and effect of Section 306 (f) since amended in 1972. It now reads pertinently as follows:

> "The employer shall provide payment for reasonable surgical and medical services, services rendered by duly licensed practitioners of the healing arts, medicines, and supplies, as and when needed: Provided, That the employe may select a duly licensed practitioner of the healing arts of his own choice, unless at least five physicians shall have been designated by the employer or by the employer and the employe's representative by agreement, in which instances the employe shall select a physician from among those designated. . . . If the employe shall refuse reasonable services of a duly licensed practitioner of the healing arts, surgical, medical and hospital services, treatment, medicines and supplies, he shall forfeit all rights to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal."

Section 306 (f) read, immediately before the 1972 amendment:

> "During the first twelve months after disability begins, the employer shall furnish reasonable surgical

and medical services, services rendered by duly licensed practitioners of the healing arts, medicines, and supplies, as and when needed, unless the employe refuses to allow them to be furnished by the employer. If the employer shall, upon application made to him, refuse to furnish such services, medicines, and supplies, the employe may procure service and shall receive from the employer the reasonable cost thereof within the above limitation. . . . If the employe shall refuse reasonable services rendered by duly licensed practitioners of the healing arts, surgical, medical and hospital services, treatment, medicines and supplies tendered to him by his employer, he shall forfeit all rights to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal."

Adverting first to the pre-1972 version of 306 (f) just quoted, it provided that medical services should be furnished by the employer and that if the employer refused to provide such the employe might procure them at the employer's expense. It was interpreted to mean that if the employer tendered reasonable services, the recusant employe would not receive reimbursement for services obtained on his own. *See Houlihan v. Joseph J. Scheiter & Co.,* 166 Pa. Superior Ct. 85, 70 A. 2d 431 (1950). Where the medical services tendered by the employer were inadequate, that is, not reasonable, the employe was entitled to reimbursement for self-obtained services. *Shank v. Consolidation Coal Company,* 161 Pa. Superior Ct. 304, 54 A. 2d 289 (1947). The sentence concerning forfeiture for refusal to accept medical services was interpreted to mean, concerning benefits for disability as distinguished from the cost of medical services, that the employer would be relieved from the payment of disability benefits only upon proof that increased disability or incapacity resulted from the refusal to accept medical services tendered by the employer. *Hanyok v.*

*Pennsylvania Coal & Coke Corporation,* 155 Pa. Superior Ct. 194, 38 A. 2d 537 (1944).[2]

The 1972 amendment made no startling change in the law. It merely shifted emphasis by providing that the employe may obtain the medical services he wishes "unless at least five physicians shall have been designated by the employer . . . in which instance the employe shall select a physician from among those designated." The employer is no longer obliged to tender services but it may do so by the designation of five physicians. If it does, the employe must select a physician from among those designated. It is in our view plain that the Legislature intended that the employe choosing medical services other than those provided by designated physicians, without authorization of the employer or the designated physician, should not have reimbursement for such other services. Of course, as heretofore, if the employer or the physician chosen from those designated should authorize such services they will be reimbursed. *Mine Safety Appliance Co. v. Roy,* 7 Pa. Commonwealth Ct. 576, 300 A. 2d 839 (1973). Also, as formerly provided by the interpretation of the Act by the cases hereinbefore cited, the employer will be required to pay for services obtained in substitution for inadequate services provided by its designated physicians. Further, under amended Section 306 (f) as the practice was formerly, the employer and its designated physicians may and in proper cases must authorize needed specialized medical services, such as those provided by dentists, occulists and chiropractors and other specialists.

Finally, we are not here concerned with compensation for disability. As the provision relating to the consequences of refusal of medical services remains essentially the same as formerly, so does the former interpretation

---

2. Overmyer's insurance carrier paid Mr. Collier compensation for disability for the almost three weeks he was unable to work.

—that the employer seeking to be relieved of paying compensation for disability must prove an increase of disability by reason of the refusal to accept medical attention.

Turning again to the facts, neither the employer's personnel manager nor the designated physician whom he first consulted suggested or authorized Mr. Collier's chiropractic treatments. The former, indeed, clearly warned that extended treatments might not be paid for by the employer. Nor is there evidence which would support the conclusion that the services of the physician designated by the employer were not reasonable.

The Workmen's Compensation Appeal Board's decision awarding Mr. Collier the amount of his chiropractor's fees was based on the Board's conclusion that the privilege of designation accorded employer by Section 306(f) as amended is merely directory—that is, that it permits the employer to designate physicians for the treatment of its employe's injuries but provides no consequence in the event of the employe's failure to comply. The phrase, "the employe shall select a physician from among those designated" cannot be ignored and we think clearly expresses a contrary conclusion. The Board also confused the rule applicable to compensation for disability on the one hand and compensation for medical expenses on the other by concluding that the employer's case against the payment of unauthorized medical expenses failed because it did not prove that Mr. Collier's disability had increased by reason of his refusal to continue treatment by the physician designated by his employer.

Since Mr. Collier had actual knowledge of the employer's designation of physicians at the time he employed other medical services, it is not necessary in this case to determine what is a sufficient designation beyond stating that in our view any action reasonably calculated to bring the designation to the attention of affected employes will

satisfy the requirements of the statute. Here the notice of designation posted at the employes' only entrance to the plant where the time clock was located seems to have been effective, although the further action of inserting such designations and amendments thereto in other materials furnished employes, such as pay envelopes, would seem to be advisable.

We have studied with interest the brief of Life Fellowship of Pennsylvania, an organization of Doctors of Chiropractic. It asks us, *inter alia,* to decide that Section 306(f) as presently written unconstitutionally discriminates against Doctors of Chiropractic. Since the parties to this litigation have not raised this issue, we feel we should not decide it in this case.

ORDER

AND NOW, this 25th day of July, 1975, it is ordered that the decision of the Workmen's Compensation Appeal Board be and it hereby is reversed.

