514 A.2d 690

Joseph P. Kuhn, Petitioner *v.* Workmen's Compensation Appeal Board (Leader Nursing Centers, Inc.), Respondents.

Argued May 15, 1986, before Judges BARRY and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Donald F. Smith, Jr., Liever, Hyman & Potter, P.C.,* for petitioner.

*Richard A. Bausher, Stevens & Lee,* for respondent, Leader Nursing Centers, Inc.

OPINION BY JUDGE BARRY, September 9, 1986:

Joseph Kuhn, the claimant, appeals from an order of the Workmen's Compensation Appeal Board which affirmed a decision of a referee and granted Leader Nursing Centers, Inc., the employer or alleged employer of the claimant, a credit of $150,000.00 towards the employer's ultimate liability for compensation.

On January 24, 1979, Rosemary Kuhn, the claimant's wife, was killed in a three car accident. She was a passenger in an automobile driven by Craig Duffy, an employee of Leader. At the time of the accident, Mr. Duffy and the decedent were enroute to a seminar being conducted by the employer. At the time of the accident, the decedent had been hired by Leader but had not actually commenced employment except for attending the seminar.

The claimant then filed wrongful death and survival actions in the Court of Common Pleas of Berks County against Leader, the Duffy Estate and the drivers of the

other two automobiles involved in the accident. Leader attempted to assert its immunity from suit as an employer. The trial court decided to bifurcate the proceedings. The first portion of the trial was to determine the questions of liability and damages for the death of the decedent. If necessary, the second portion would have the jury decide if the decedent had been an employee of Leader. Following the first part of the trial, the jury completely exonerated the other two drivers and found that Leader and the Duffy Estate were liable for damages of $400,000.00. Rather than submit the employment issue to the jury, the claimant agreed to issue a joint tortfeasor release to Leader and the Duffy Estate in return for payment of $200,000.00. Duffy's automobile liability carrier paid $50,000.00 and St. Paul Insurance Co., Leader's automobile liability carrier, paid $150,000.00. The release specifically provided that the question of decedent's status as an employee was left unresolved.

The claimant then sought workmen's compensation death benefits. Leader's compensation carrier, Pennsylvania Manufacturers Association Insurance Co. (PMA), paid $1500.00 as the limit for funeral expenses but refused to pay any weekly benefits, believing (1) that a widower was not entitled to weekly benefits unless he was incapable of self-support and (2) that PMA was entitled to a credit of $150,000.00 because of the aforementioned settlement. Because of a refusal to pay, the claimant filed a fatal claim petition.

In *Oknefski v. Workmen's Compensation Appeal Board,* 63 Pa. Commonwealth Ct. 450, 439 A.2d 846 (1981), we decided that a widower was entitled to weekly benefits to the same extent as widows. PMA has abandoned its first defense that the claimant was not entitled to weekly death benefits. PMA continued to assert the defense that it was entitled to a credit. The

case was then presented to the referee on stipulated facts, which included a provision that the decedent had been an employee of Leader at the time of her death. The referee decided that the claimant was entitled to weekly death benefits of $114.75 per week. He also decided that PMA was entitled to a credit of $150,000.00 by virtue of the settlement. The Board affirmed and this appeal followed.

The sole issue presented is one of law. On these facts, is PMA entitled to a credit towards its ultimate workmen's compensation liability by virtue of the payment of $150,000.00 by the employer's automobile liability carrier? We believe not.

Permit us to first make clear what is not being sought. St. Paul, the automobile liability carrier, is not seeking subrogation. Section 319 of the Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §671, provides:

> *Where a compensable injury is caused in whole or in part by the act or omission of a third party,* the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, *against such third party* to the extent of compensation payable under this article by the employer. . . .

> Where an employe has received payment for the disability or medical expense resulting from an injury in the course of his employment paid by the employer or an insurance company on the basis that the injury and disability were not compensable under this act in the event of an agreement or award for that injury the employer or insurance company who made the payments shall be subrogated out of the agreement or award to the amount so paid, *if the right to subrogation is agreed to by the parties or is es-*

*tablished at the time of hearing before the refer-
ee or the board.* (Emphasis added.)

In *Humphrey v. Workmen's Compensation Appeal
Board,* 99 Pa. Commonwealth Ct. 33, 514 A.2d 246
(1986), we discussed the two paragraphs of Section 319.
The first paragraph, permitting subrogation where an
injury is caused "in whole or in part by an act or omis-
sion of a third party" is obviously not applicable to the
present situation, as the jury in the bifurcated
proceedings determined that all of the causal negligence
was that of Leader and its employee Duffy. The second
paragraph, permitting subrogation where an insurance
company makes payments for either disability or medi-
cal expenses, believing such injury was not compensa-
ble under the Act when the injury was, in fact, compen-
sable could allow St. Paul to assert its subrogation inter-
est. St. Paul, however, has failed in any way to assert
this interest and we may not allow subrogation on such
facts *sua sponte. See Workmen's Compensation Appeal
Board v. Olivetti Corp. of America,* 26 Pa. Common-
wealth Ct. 464, 364 A.2d 735 (1976). As the parties
never agreed to subrogation, Section 319 is simply not
applicable to these proceedings.

Leader argues that its Workmen's Compensation
carrier, PMA, is entitled to a credit of $150,000.00 to-
wards its ultimate compensation liability. Leader argues
that *Olivetti* supports its position concerning a credit.
Again, in *Humphrey,* we discussed the differences be-
tween the concepts of subrogation and a credit. We be-
lieve the following points must be reiterated. While
subrogation under the Act is statutory in origin under
Section 319, the idea of a credit has its origin in case
law. *Chase v. Emery Manufacturing Co.,* 271 Pa. 265,
113 A. 840 (1921). A credit is allowed where the em-
ployer makes payments in lieu of compensation for an

injury which is subsequently determined to be compensable under the Act. If a claimant is required to use up *benefits* which could have been used for other purposes, the employer is not entitled to a credit. *Olivetti*. Further, it matters not whether these payments come directly from the employer or from an insurance carrier from which the employer has purchased a policy to provide coverage for the employee benefits. *Humphrey*.

We believe no credit is available under the facts of the present case. Most importantly, the payment of $150,000.00 by Leader's automobile liability carrier cannot be in lieu of compensation. In 1974, the Legislature amended Section 303 of the Act, 77 P.S. §481, to provide an employer with absolute immunity from suit by any employee. Payments made by an automobile liability carrier, to cover losses where the employer is *negligent,* cannot be in lieu of compensation, since an employer can never be liable to an employee because of the employer's negligence. Leader had the opportunity to establish the employment relationship between itself and the decedent at the proposed second state of the bifurcated proceedings at the trial in common pleas court. Leader goes to great pains to point out in its brief that had it contested the claimant's allegation that his wife was not employed by Leader at the time of the accident and established that she was an employee, it would have had to pay nothing on the wrongful death and survival actions. For our present purposes, it is sufficient to say that Leader chose not to place this dispute before the fact-finder; rather, it chose to settle the case and limit its potential liability by one half. Having made such payment, Leader cannot now argue that such payments were in lieu of compensation.

Even if this case did not have this unique factual and procedural background, we do not believe that pay-

ments made by its automobile liability carrier would entitle Leader to a credit. As *Olivetti* makes clear, an employer is entitled to a credit for payments when the claimant is not required to use up *benefits* for the compensable injury which could have been used for other purposes. By their very nature, benefits are something provided by the employer for its employees. Automobile liability coverage insuring the employer cannot be a benefit to any employee following the 1974 amendments to Section 303 of the Act.

Leader also cites *Peoples Natural Gas Company v. Workmen's Compensation Appeal Board,* 65 Pa. Commonwealth Ct. 119, 441 A.2d 1364 (1982), and *Simpson v. Workmen's Compensation Appeal Board,* 48 Pa. Commonwealth Ct. 51, 408 A.2d 1186 (1979), for support that it is entitled to a credit. Both of those cases allowed a credit where the original payments had been made by a *benefit* provided by the employer. For that reason alone, those cases are inapposite.

We can, therefore, find no support, in either legislation or case law, which would entitle Leader to a credit for the $150,000.00 payment made by St. Paul. Furthermore, for the reason already stated, no right to subrogation exists in this case. All of this leads to the inescapable conclusion that the Board's order allowing such a credit must be reversed.

### ORDER

NOW, September 9, 1986, the order of the Workmen's Compensation Appeal Board, dated September 12, 1985, at No. A-83827, is reversed.