524 A.2d 1016

Harry C. Frymiare, III, Petitioner *v.* Workmen's Compensation Appeal Board (D. Pileggi & Sons) (Security Insurance Group), Respondents.

Submitted on briefs February 23, 1987, to Judges MACPHAIL and BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*Leonard V. Tenaglia, Richard, DiSanti, Hamilton, Gallagher & Paul,* for petitioner.

*Susan McLaughlin, Harvey, Pennington, Herting & Renneisen, Ltd.,* for respondents.

OPINION BY SENIOR JUDGE BARBIERI, April 20, 1987:

Before the court in this workmen's compensation case is the appeal of Claimant, Harry C. Frymiare, seeking review of an order of the Workmen's Compensation Appeal Board (Board).

The basic facts are not in dispute. Claimant, a laborer in the employ of D. Pileggi & Sons (Employer), was injured in the course of his employment on February 17, 1983. The obligation to pay compensation by Pileggi's insurer, Security Insurance Group, is undisputed.[1] In making an award for disability benefits, how-

---

[1] Claimant's medical witness, Dr. Howard S. Lubin, testified by deposition, in part as follows:

Based upon the history that I obtained from the patient, and the information made available to me by Dr. Trabulsi, and Riddle Hospital, the man obviously sustained a herniated disc, ruptured his L-5, S-1 disc on the 17th of February, 1983, following a heavy lifting episode during the performance of his work duties at the Chadds Ford construction site. R.R. 68a.

. . . .

The lifting of the railroad tie was the, was the actual precipitating factor that caused the disc to herniate. R.R. 69a.

Claimant was hospitalized in Riddle Memorial Hospital from February 20, 1983 to March 8, 1983 for "Herniated Lumbar disc L5S1" with surgery on March 1, 1983 "hemilaminectomy & disc excision L5S1." R.R. 53a.

ever, the referee, while granting Claimant's claim for medical payments paid by him personally in the amount of $379.26, denied the balance of his medical costs in the amount of $9,522.94, on the basis that the latter sum had not been paid by Claimant, but had been paid by a medical plan provided by Claimant's wife's employer, Conrail. Conrail does not seek subrogation for its payments in this proceeding; nevertheless, the referee disallowed Claimant's request for payment of sums paid by Conrail. Also, the referee disallowed interest on compensation benefits as well as on all medical expenses, those paid by the Claimant and those paid by Conrail, this disallowance levied as a penalty against Claimant on finding that he was "less than forthright and cooperative in providing the information as to exactly what he paid as opposed to exactly what was paid by third parties in connection with his medical expenses." Finding of Fact No. 12, and see No. 13. On appeal, the Board affirmed.

The issues before us simply are (1) whether or not Claimant can require payment to him by his Employer for medical bills not paid by him, but paid by his wife's employer, Conrail, under Conrail's plan for which Conrail seeks no reimbursement by subrogation or otherwise, and (2) whether Claimant may properly be penalized by disallowance of interest payments under the circumstances in this case. We cannot agree with the disallowance of medical payments and interest in this case and must reverse as to both items.[2]

As to the medical payments made by Conrail, the following findings by the referee are pertinent:

---

[2] In fairness to the referee, Referee Troilo, the principal rulings of this Court on which we base our disagreement with him were not decided or filed until after his decision herein had been entered.

7. In view of the limited period of disability the Defendant then advised the Claimant of its willingness to accept the claim for disability benefits and medical expenses actually incurred. A stipulation was provided to the Claimant's attorney but it was not executed because of the Claimant's contention that he was entitled to direct payment of the full amount of medical expenses even though he had not paid those medical expenses.

9. The Referee finds as fact that the bulk of these medical bills have been paid by a third party, namely Conrail, under a plan of health and accident coverage provided incident to the Claimant's wife's employment.

. . . .

14. At the hearing on March 8, 1984 the Carrier agreed to reimburse the Claimant for $379.26 of medical expenses which he actually paid.

15. The issue before the Referee is now whether the Claimant should receive the balance of the $8,822.94 representing the total medical bills at issue in the case.[3]

16. The Referee finds that except for payments by the Claimant and his wife in the amount of $379.26 these bills have been satisfied by payments from Conrail.

17. Conrail has not advised the Referee of its intention to pursue a right of subrogation. The

---

[3] The referee's computation of medical expenses in his finding No. 8 inadvertently reached the total of $8,822.94, stated also in Finding No. 15, by recording Dr. Trubulsi's charges as $2,295.00, $700.00 less than the uncontested and correct amount of $2,995.00. R.R. 52a, Exhibit C-1. The correct total is $9,522.94, $379.26 of which was paid by Claimant, leaving a balance due Claimant of $9,143.68.

Claimant's attorney has not provided evidence that he is authorized to represent Conrail in connection with any potential right to subrogation for payment of these amounts.

The referee's conclusions of law include the following:

6. The Referee concludes that the Claimant, upon receiving $379.26 by way of reimbursement from the Defendant will have been fully compensated for his entitlement to reimbursement and for medical expenses under Section 306(f) of the Act.

. . . .

8. The Claimant has, at this point, been compensated for all the medical expenses and disability benefits due to him under the Pennsylvania Workmen's Compensation Act. His petition should therefore be granted but no further payments are due.

We note at the outset that under the provisions of the applicable paragraph of Section 319 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §671, it has been ruled by this Court that no subrogation is due unless claimed. In *Kuhn v. Workmen's Compensation Appeal Board (Leader Nursing Centers),* 100 Pa. Commonwealth Ct. 407, 514 A.2d 690 (1986), we stated:

The second paragraph,[4] permitting subrogation where an insurance company makes pay-

---

[4] The second paragraph of Section 319, 77 P.S. §671 reads: When an employe has received payments for the disability or medical expense resulting from an injury in the course of his employment paid by the employer or an insurance company on the basis that the injury and disability were not compensable under this act in the event of an agreement or award for that injury the employer or insurance

ments for either disability or medical expenses, believing such injury was not compensable under the Act when the injury was, in fact, compensable could allow St. Paul [insurer] to assert its subrogation interest. *St. Paul, however, has failed in any way to assert this interest and we may not allow subrogation on such facts sua sponte.* See Workmen's Compensation Appeal Board v. Olivetti Corp. of America, 26 Pa. Commonwealth Ct. 464, 364 A.2d 735 (1976). As the parties never agreed to subrogation, Section 319 is simply not applicable to these proceedings. (Emphasis added).

*Id.* at 411, 514 A.2d at 692.

In *General Tire & Rubber Co. v. Workmen's Compensation Appeal Board (Back),* 16 Pa. Commonwealth Ct. 473, 332 A.2d 867 (1975), we stated "if subrogation rights exist in favor of the insurance company making the payments, it would be the insurance company, not General, [the employer] who could seek subrogation." 16 Pa. Commonwealth Ct. at 480, 332 A.2d at 871.

The employer here, as in *General Tire,* seeks what amounts to subrogation in its favor, a remedy which may have existed if claimed by the payor, asserting that otherwise the Claimant may be the beneficiary of a "Double Dip on Medical Expenses." The reasonableness or logic of this assertion is not apparent. The workmen's compensation insurer is responsible to pay medical expenses of a claimant injured in the course of his employment, and this obligation may not be avoided on the basis that some other source, such as Claimant's

---

company who made the payments shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties or is established at the time of hearing before the referee or the board.

wife's sources through her employer, may have initially defrayed such costs. The exception, of course, is where the source of the payments is funded by the employer. It would be no different, we believe, if the wife had advanced these medical payments out of her own personal resources.[5]

Furthermore, in *Humphrey v. Workmen's Compensation Appeal Board (Supermarket Service)*, 100 Pa. Commonwealth Ct. 33, 514 A.2d 246 (1986), quoting from *General Tire*, we stated:

'General fails to direct us to any authority or advance any reason why it is against public policy or prohibited to permit simultaneous recovery under the Pennsylvania Workmen's Compensation Act and a private health insurance program.'[6]

. . . .

Accordingly, we remain unconvinced by Travelers' argument and believe that the rule of General Tire permitting simultaneous recovery from an employer and a private health plan could permit the claimant to collect from the employer and retain the $9,503.48, the sum

---

[5] Claimant's wife, of course, cannot be subrogated, aside from not being the actual payor, since only the employer or an insurer is eligible for subrogation under the second paragraph of Section 319. *Id.* and *see Holgate v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 104 Pa. Commonwealth Ct. 32, 521 A.2d 82 (1987); *Workmen's Compensation Appeal Board (Burgerhoff) v. Branch Motor Express*, 18 Pa. Commonwealth Ct. 262, 334 A.2d 847 (1975).

[6] We note that in certain cases where subrogation is not available, credit in reduction of compensation due is granted, but only where the payment to be credited is provided by the employer. *Olivetti; Kuhn*, 100 Pa. Commonwealth Ct. at 413, 514 A.2d at 693; *Humphrey*, 100 Pa. Commonwealth Ct. at 41, 514 A.2d at 249-250.

which Travelers paid to the health care providers.
100 Pa. Commonwealth Ct. at 39, 41, 514 A.2d at 249-250.

We come now to the issue as to the penalty imposed by disallowance of interest otherwise payable by Employer. The payment of interest on compensation benefits, for disability and on medical bills,[7] is an absolute obligation of the Employer.[8] Indeed, this Court has held that interest payments are part of compensation due claimant such that even an agreement by the parties to waive interest is illegal and null and void under the Provisions of Section 407 of the Act, 77 P.S. §751. *Klingler v. Workmen's Compensation Appeal Board (Rupert)*, 50 Pa. Commonwealth Ct. 335, 413 A.2d 432 (1980). *See also Liberty Baking Company v. Workmen's Compensation Appeal Board (Carmadella)*, 63 Pa. Commonwealth Ct. 517, 439 A.2d 1276 (1981); *Commonwealth v. Owens*, 53 Pa. Commonwealth Ct. 337, 417 A.2d 1289 (1980).

It is true, of course, that the penalty of loss of interest may be levied under the terms of Section 435(d)(iii) of the Act, 77 P.S. §991(d)(iii), the relevant portions of which read:

(d) The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions

---

[7] Interest must be paid on unpaid medical expenses. *Shank v. Consolidated Coal Co.*, 161 Pa. Superior Ct. 304, 54 A.2d 289 (1947). *See Liberty Baking Company v. Workmen's Compensation Appeal Board (Carmadella)*, 63 Pa. Commonwealth Ct. 517, 439 A.2d 1276 (1981).

[8] Interest accrues "on all due and unpaid compensation at the rate of ten per centum per annum." Section 406.1 of the Act, 77 P.S. §717.1.

of this act or such rules and regulations or rules of procedure:

. . . .

(iii) Claimants shall forfeit any interest that would normally be payable to them with respect to any period of unexcused delay which they have caused.

We observe that the referee's findings attributing delay to the Claimant were obviously based upon his view that Claimant was captious, "less than forthright and cooperative," in his dealings with Employer's insurer. Findings of Fact Nos. 12 and 13. These dealings, however, stemmed from the insurer's refusal to honor Claimant's claim to reimbursement for the medical expenses initially defrayed by Conrail. As we have stated heretofore, Claimant had a legal right to the reimbursement for such items. Accordingly, as the record plainly demonstrates, it was the contest by the insurer of this right that occasioned the delay in making payment. As the Claimant points out in his brief:

Moreover, it is clear that the delay in the payment of compensation and benefits is not because of claimant's alleged delay in providing information to the employer. Instead, the delay was caused by the legal disagreement between the employer and the claimant as to the employer's liability for the medical expenses previously paid by Conrail. . . . The employer has never claimed and does not now claim that had the claimant, prior to the March 8, 1984 hearing, provided the employer with the amount of Conrail's payments it would have paid claimant his full $9,522.94 in medical expenses.

Brief for Claimant at 14.

Although the Employer's insurer complained at the hearing on March 8, 1984, that Claimant had failed "since September" to provide information as to medical

bills, the record establishes that at the hearing of June 30, 1983, there was offered and received in evidence without objection the bill of Dr. Richard Trubulsi for $2,995 and that of Riddle Hospital for $5,658.10, as follows:

> MR. RICHARD: I have these two bills. Would you mark the C-1 and C-2? The top one is Dr. Trubulsi [sic] and the second one is Riddle Hospital. I offer into evidence C-1 and C-2?
>
> The Referee: Any objection?
>
> Ms. McLaughlin: No.
>
> (BILL OF DR. TRUBULSI—produced and marked for identification as Claimant's Exhibit No. 1 and admitted into evidence.
>
> (BILL OF RIDDLE MEMORIAL HOSPITAL—produced and parked [sic] for identification as Claimant's Exhibit No. 2 and admitted into evidence.)

R.R. 22a-23a; Exhibits at 52a.

Actually, the necessity for litigation arose out of Claimant's refusal to stipulate to medical liability limited to $379.26, the amount Claimant personally paid. In view of our ruling heretofore, Claimant's refusal was rightful and, therefore, the contest and consequent delay was attributable solely to the Employer and its insurer and not to the Claimant.

In any event regular interest is not assessed as a penalty, but is compensation to the claimant for the delay during which the employer or its insurer has the use of the funds and claimant does not. *Lastoka v. Workmen's Compensation Appeal Board (Wheeling-Pittsburgh Steel Corp.)*, 51 Pa. Commonwealth Ct. 310, 413 A.2d 481 (1980). We there stated:

> This result is consistent with our decision in Klingler v. Workmen's Compensation Appeal Board, 50 Pa. Cmwlth. 335, 413 A.2d 432 (1980), where we held that interest payments

are designed to put a claimant in the same position as if no contest had been made and are, therefore, part of the compensation due. Similarly, in Mathies Coal Co. v. Workmen's Compensation Appeal Board, 40 Pa. Cmwlth. 120, 129, 399 A.2d 790, 794 (1979), Judge MacPhail wrote:

'The imposition of interest by the Legislature is not because of fault on the part of the employers, but rather because of delay in payment. Obviously, during the proceedings, the Coal Companies had the use of the funds which were ultimately due the Claimants. By the same token, the Claimants have been deprived of the use of their benefits during the period they were withheld. For this reason they are entitled to additional compensation in the form of interest.'

*Id.* at 313, 413 A.2d at 482.

In *Liberty Baking,* we rejected the contention that claimant be deprived of interest, stating:

Finally, appellant contends that the imposition of interest on the award of benefits under 77 P.S. §717.1 is unreasonable, in that the delay was caused not by the employer, but by the claimant's 'bumbling' through various versions of her husband's death. That qualification is not relevant. The Act imposes interest so that the claimant will not be adversely affected by a contest, *not* as a penal measure against the employer who reasonably contests a claim. Lastoka v. Workmen's Compensation Appeal Board, 51 Pa. Commonwealth Ct. 310, 413 A.2d 481 (1980). The award of interest in this case was not in error. (Emphasis the Court's.)

63 Pa. Commonwealth Ct. at 524, 439 A.2d at 1279.

Accordingly, for the reasons stated, we will reverse and direct that interest be paid on all weekly compensa-

tion payments and on medical expenses including those previously defrayed by Conrail, computed as required under Section 406.1 of the Act, *Lastoka,* until the date when paid.

## ORDER

NOW, April 20, 1987, the order of the Workmen's Compensation Appeal Board as of No. A-88229, dated September 10, 1985, is reversed as to the disallowance of medical expenses previously paid by Conrail, and it is directed that the amount of such payments as stated herein be reimbursed to Claimant with interest computed and paid as required under Section 406.1 of the Act on disability benefits and on all medical expenses including amounts previously defrayed by Conrail, *said* interest to run on each item until the date when paid.