**CEDAR FARMS, INC. and CNA Insurance Companies, Petitioners,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (SANTIAGO), Respondent.**

**CEDAR FARMS, INC. and American Mutual Insurance Company, Petitioners,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (SANTIAGO), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 5, 1995.

Decided Oct. 13, 1995.

Annabelle R. Cedar, for petitioner CNA Insurance Companies.

Meloday Watts, for petitioner American Mutual Insurance Co.

Blaise H. Coco, Jr., for respondent Jose Santiago.

Before McGINLEY and NEWMAN, JJ., and LORD, Senior Judge.

NEWMAN, Judge.

CNA Insurance Companies (CNA) appeals from an order of the Workmen's Compensation Appeal Board (Board) that affirmed a referee's decision finding CNA was the insurance carrier for Cedar Farms, Inc. (Employer) at the time that Jose Santiago (Claimant) sustained work related injuries. American Mutual Insurance Company (AM), Employer's current insurer, agrees that CNA is the responsible carrier. However, it appeals the Board's order because it affirmed the referee's decision that did not address whether CNA, in addition to reimbursing AM for benefits it erroneously paid to Claimant, was also obligated to pay interest on that amount. We affirm.

The critical factual issue in this case is the date on which Claimant was injured. CNA insured Employer for workers' compensation from November 11, 1983 through November 11, 1984. AM insured Employer on and after November 12, 1984.

On December 7, 1984, Employer informed AM that Claimant sustained a work related injury on November 16, 1984. On January 3, 1985, AM issued a Notice of Compensation Payable. AM had no reason to doubt the date of injury because it was not advised differently by Employer or Claimant. Furthermore, the medical bills and reports from health care providers submitted to AM did not indicate an accident date other than November 16, 1984.

On March 8, 1985, during an interview with CNA's senior adjustor, Myron Leek, Claimant stated that he was not certain about the date of his injury. Leek continued to investigate the issue because he perceived a question regarding coverage. Leek received a letter from Claimant's counsel stating that the accident could have occurred on November 9, 13, or 16, 1984. In late May

1985, Leek received a Northeastern Hospital emergency room record indicating that Claimant had visited the hospital on November 6, 1984, for an injury sustained at work that day. He also received a letter from Claimant's counsel indicating that he was convinced that the accident occurred on November 6, 1984. Based on its investigation, AM filed a petition to review notice of compensation payable, in which it averred that the date of the accident was November 6, 1984, and the proper insurance carrier was CNA. AM also sought reimbursement of all benefits paid to Claimant, with costs and counsel fees.[1]

On May 16, 1986, Claimant filed a claim petition against Employer naming both CNA and AM as insurance carriers. The petition states that Claimant sustained an injury on November 6, 1984.

AM filed a petition for termination on May 5, 1987, in which it alleged that the benefits that it had been paying to Claimant since November 16, 1984 should have been made by CNA.

On October 7, 1987, the referee issued an order pursuant to Section 410 of The Pennsylvania Workers' Compensation Act[2] (Act), directing that Claimant's compensation on and after November 16, 1984 be shared equally by CNA and AM. The order further required CNA to reimburse AM one-half of the compensation AM had paid to Claimant prior to the order.[3]

On February 17, 1988, CNA filed a petition for review challenging the necessity of Claimant's treatment and the reasonableness of the fees for such services pursuant to Section 306(f) of the Act, 77 P.S. § 531. CNA further averred that any reasonable medical expenses incurred by Claimant were the responsibility of AM.

On February 18, 1988, AM also filed a petition for review challenging the necessity of Claimant's treatment and the reasonableness of fees for such services pursuant to Section 306(f) of the Act. AM specifically asserted that it was not responsible for Claimant's ongoing medical treatment for his right hip because his original work injury involved the left leg.

The petitions were consolidated, and on March 10, 1992, the referee issued a decision and order. The referee found that on November 6, 1984, Claimant was delivering cases of eggs to a cellar storage area at Day's Deli in Center City Philadelphia, when one of the cellar steps collapsed, throwing him backwards. During the fall, Claimant's left leg caught under the metal cellar door, causing pain in his left hip. Claimant continued his deliveries, but called employer to report that he had been injured. That afternoon, Claimant's wife took him to the emergency room of Northeastern Hospital, where he was diagnosed as having abdominal muscle wall strain. Claimant continued to work with progressively worsening pain in his left hip and groin from November 6, 1984 through November 28, 1984, the final day Claimant worked for Employer.

On or about November 30, 1984, while Claimant was a patient at Metropolitan Hospital, he was treated by Dr. John J. McPhilmey. At the hearing, Dr. McPhilmey testified that Claimant suffered a stress type fracture of the left hip. He further diagnosed Claimant as suffering from avascular necrosis of the left hip. Dr. McPhilmey opined that Claimant's avascular necrosis pre-existed his work injury, but Claimant's

---

1. AM also filed a petition to join CNA as a party. The referee denied this petition.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 751 provides in relevant part:
   Whenever any claim for compensation is presented and the only issue involved is the liability as between the defendant or the carrier or two or more defendants or carriers, the referee of the department to whom the claim in such case is presented shall forthwith order payments to be made by the defendants or the carriers in said case. After the department's referee or the board on appeal, render a final decision, the payments made by the defendant or carrier not liable in the case shall be awarded or assessed against the defendant or carrier liable in the case, as costs in the proceedings, in favor of the defendant or carrier not liable in the case.

3. CNA appealed the Section 410 order to the Board. The Board quashed the appeal, but deleted the part of the order requiring CNA to reimburse AM one-half of the compensation paid prior to the date of the order.

fall at work on November 6, 1984 triggered the onset of the symptoms and accelerated the disease process. Although Dr. McPhilmey testified that the trauma Claimant suffered by continuing to work after his fall at Day's Deli contributed to his condition, Dr. McPhilmey asserted that the incident at Day's Deli was the initiating and most significant trauma.

The referee found that Claimant sustained his injury during the course of his employment on November 6, 1984. This injury resulted in Claimant being totally disabled from performing his pre-injury job as of November 29, 1984. The referee also found that the medical evidence in the record indicated that Claimant was able to return to work in a very light, sedentary position. However, since Employer did not present evidence of alternative work, the referee determined that Claimant was totally disabled.

The referee granted Claimant's claim petition against CNA, and ordered CNA to pay Claimant compensation for total disability at the rate of $233.33 per week from November 29, 1984 into the future. Accordingly, the referee dismissed the claim petition as to AM.

In addition, the referee concluded that CNA had not met its burden of supporting its allegation that Claimant's ongoing medical expenses were unrelated to the November 6, 1984 injury or that the frequency of treatment was unreasonable. Accordingly, he dismissed the petition for review filed by CNA under Section 306(f).

The referee also granted AM's petition to set aside the notice of compensation payable issued January 3, 1985, and further ordered that CNA reimburse AM for all compensation it had paid to Claimant pursuant to the Section 410 order, as well as for all compensation it had paid to Claimant before the entry of the Section 410 order.

Last, the referee dismissed AM's petition for review under Section 306(f) and its petition for termination.

CNA and AM each appealed the referee's decision to the Board, which by order dated December 22, 1993, affirmed the decision. This appeal followed.

### CNA's Appeal

On appeal to this court, CNA raises the following four issues: (1) whether AM was precluded from challenging the notice of compensation payable; (2) whether AM is liable for Claimant's compensation benefits because his condition did not become truly disabling until November 28, 1984, when AM was the carrier on the risk; (3) whether the referee's finding that Claimant's condition in his right hip was caused by the condition in his left hip is based on substantial evidence; and (4) whether the referee erred by issuing a Section 410 order since causation was at issue in addition to liability.[4]

■ With respect to the first issue, CNA argues that the referee erred in failing to apply *Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.)*, 502 Pa. 178, 465 A.2d 969 (1983) to this case. In *Beissel*, employer issued a notice of compensation payable on February 7, 1977 for a back injury claimant sustained on May 6, 1975 while working as a waitress. On June 29, 1979, employer filed a termination petition alleging that claimant's condition was unrelated to the May 6, 1975 injury. The Supreme Court held that because employer had the opportunity to investigate the cause of claimant's injury, and did undertake such an investigation, the notice of compensation payable filed by employer was an admission of liability for claimant's injury. Therefore, employer was precluded from presenting testimony that contradicted what it had previously admitted.

AM counters that *Barna v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corporation)*, 513 Pa. 518, 522 A.2d 22 (1987) controls this case. We agree. In *Barna*, claimant suffered back pain in July 1977 after operating a crane. Pursuant to a notice of compensation payable

---

4. Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 132 Pa.Commonwealth Ct. 277, 572 A.2d 838 (1990), *aff'd,* 531 Pa. 287, 612 A.2d 434 (1992).

dated October 10, 1977, claimant began receiving disability payments. On October 13, 1977, a physician for employer requested claimant's hospital records. Based on a review of the records and observation of claimant, the doctor concluded that claimant's disability was not work related. Accordingly, in December 1978, employer filed a petition upon which the referee based his decision terminating claimant's benefits. The Board affirmed the referee's decision. This court reversed, based on *Beissel* and noted the potential for abuse if employers are allowed to make repeated challenges regarding the cause of a claimant's disability.

The Supreme Court reversed this court's decision in part because of Section 413(a) of the Act, 77 P.S. § 771, which states: "A referee of the department may, at any time, review and modify or set aside a notice of compensation payable . . . if it be proved that such notice of compensation payable . . . was in any material respect incorrect." The Court also recognized that pursuant to Section 406.1 of the Act, 77 P.S. § 717.1, the employer and insurer are obligated to begin payment promptly. Thus, where employer commences payment in a timely manner but before initiating or completing an investigation into the cause of claimant's injuries, and where employer later determines that claimant's disability was not work related, employer must be permitted to seek relief in the absence of evidence of repeated contests of the cause of claimant's disability.

This case is similar to *Barna* because AM began payment under the mistaken belief that it was the responsible carrier. Our review of the record indicates that Theresa Dowds, the first AM adjustor handling the case, testified that Employer never told her that the accident did not occur on November 16, 1984. Notes of Testimony, February 11, 1988, at 293. She further testified that nothing she received prompted her to do anything out of the ordinary with regard to this case. *Id.* at 298.

The record also indicates that shortly after the case was assigned to claim representative Myron Leek, he interviewed Claimant and became aware that the date of the injury was in question. A prompt investigation followed, and AM discovered that the accident occurred on November 6, 1984. AM informed CNA of the correct date, but CNA refused to assume responsibility for coverage.

Based on these facts we conclude that AM acted appropriately by issuing a notice of compensation payable and then investigating the matter thoroughly. Because the notice was materially incorrect, and AM initiated a prompt investigation, we further conclude that AM was not precluded from challenging the notice of compensation payable, and therefore the referee did not err in setting it aside.

■ CNA next argues that the referee erred in determining that it is liable for Claimant's compensation because even if Claimant fell on November 6, 1984, he did not become disabled until November 28, 1984. In support of its position, CNA proffered the testimony of Dr. J. David Hoffman, an orthopedic surgeon who examined Claimant on October 21, 1988. Dr. Hoffman noted Claimant's preexisting avascular necrosis, and opined that the mini-traumas associated with Claimant's continued work from November 6, 1984 through November 28, 1984 precipitated the symptoms leading to the collapse of Claimant's diseased left femoral head. Dr. Hoffman testified that the injury Claimant sustained on November 6, 1984 could not be singled out as the sole cause of the aggravation of his underlying disease, but that the strain he underwent following the injury played a material part in accelerating the underlying disease.

CNA relies on *Fidelity Mutual Life Insurance Co. v. Workmen's Compensation Appeal Board (Gourley)*, 126 Pa.Commonwealth Ct. 188, 559 A.2d 84 (1989) and *Divine Providence Hospital v. Workmen's Compensation Appeal Board (Bonner)*, 75 Pa.Commonwealth Ct. 565, 462 A.2d 917 (1983) as authority that the carrier at the time of the last aggravation of a pre-existing condition that results in disability is the responsible carrier. However, in *Fidelity* and *Divine Providence*, there was a gradual worsening of a condition rather than a specific event that triggered the disability.

Here, the referee rejected as not convincing, "Dr. Hoffman's opinion, which seems to minimize the November 6, 1984 fall at Day's Deli and to view it as no more serious than the other mini-traumas associated with Claimant's day to day work and personal activities until November 28, 1984." Finding of Fact No. 19. However, the referee accepted the opinion of Claimant's treating physician, Dr. McPhilmey who testified:

> I believe that the primary etiologic factor which precipitated his symptoms was the fall through the steps and then falling down. The subsequent factor that he continued working despite the fact that his hip was painful, yes, that did contribute, but if you're asking me to assign what do I feel was more to blame, the initial incident, the initial fall of 11/6/84 was more significant.

N.T., June 14, 1990, at 52.

Dr. McPhilmey further testified:

> You asked me was there a difference, and I thought that the incident allegedly of 11/6/84 was more of a macrotraumatic incident than was [sic] the subsequent microtraumatic incidents of repetitively getting in and out of the truck on an already injured and hurting hip.

*Id.* at 63–64.

■ Based on Dr. McPhilmey's testimony, the referee found that the aggravation of Claimant's avascular necrosis took place when he fell at Day's Deli on November 6, 1984. Where a claimant's disability is the result of the aggravation of a preexisting condition, the injury is treated as one occurring at the time of the aggravation. *Swartz v. Workmen's Compensation Appeal Board (Dutch Pantry Restaurant)*, 117 Pa.Commonwealth Ct. 47, 543 A.2d 201 (1988). Because the referee found that Claimant's disability was the result of a specific incident, we determine that he did not err in rejecting CNA's argument that this case is controlled by *Fidelity* and *Divine Providence*.

■ Third, CNA argues that the referee's finding that Claimant's injury to his left hip also caused disability in his right hip is not based on substantial evidence. With respect to this issue, the referee summarized the opinions of three medical experts:

24. Dr. [John R.] Duda [a board certified orthopedic surgeon who examined claimant on September 26, 1988 on behalf of AM] was of the opinion that it would be medically impossible that the avascular necrosis present in Claimant's right hip had been caused by an injury to the left hip because the vascular structure supplying blood to the femoral bone in the right hip does not pass anywhere near the left hip.

25. Dr. Hoffman was of the firm opinion that the problems in Claimant's right hip were not at all related to any traumas at work.

26. In Dr. McPhilemy's opinion Claimant's right hip went on to develop avascular necrosis. Dr. McPhilmey stated: "Usually the condition is bilateral, and when you see it in one region, you can expect ultimately that it will occur in the other contralateral hip ... were the condition not to have appeared in the left hip, necessitating the patient then to begin to bear more weight on the right hip in order to off-load the painful hip, the condition would not have occurred as soon as it did."

Referee's Decision at 19.

The referee then made the following finding of fact:

27. With respect to whether Claimant suffered disability in his right hip as a result of the injury to his left hip, the referee is more persuaded by Dr. McPhilmey's opinion than by the opinions of Dr. Duda and Dr. Hoffman. The referee finds that the Claimant's injury, when he fell at Day's Deli on November 6, 1984, ultimately caused disability in both of his hips.

*Id.* at 19–20.

■ Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Republic Steel Corporation v. Workmen's Compensation Appeal Board (Shinsky)*, 492 Pa. 1, 421 A.2d 1060 (1980). Dr. McPhilmey testified within a reasonable degree of medical certainty that but for the injury Claimant sustained to his left hip, he would not have developed avascular necrosis of the right hip as soon as he did. Our review of the record indicates that Dr. McPhilmey's testimony,

which the referee found credible, was a proper basis for his determination that Claimant's injury caused the disability in his right hip.

The final issue raised by CNA is whether the referee erred in issuing a Section 410 order. Section 410 provides, in relevant part, that where the only question involved is liability between two or more carriers, the referee shall order the carriers to make immediate payment to the claimant. After a final determination, payments made by the carrier who is not liable are assessed against the carrier who is liable. Here, the referee ordered that CNA and AM each pay one-half of Claimant's compensation.

CNA argues that a Section 410 order was inappropriate because causation and medical expenses were at issue along with liability. Our review of the record indicates that before the referee issued the Section 410 order, three petitions and responses had been filed: AM's petition for review, Claimant's claim petition, and AM's termination petition. Because the only issue raised in these petitions was the date of injury, which clearly relates only to liability, we conclude that the referee did not err in ordering relief pursuant to Section 410.

### AM's Appeal

The referee's order contains the following provision:

> CNA shall reimburse AM for all lost time and medical compensation which AM paid to Claimant pursuant to the referee's October 9, 1987 Order under Section 410 of the WCA as well as lost time and medical compensation AM paid to Claimant prior to the entry of the Section 410 order.

Referee's Decision at 14.

On appeal, the sole issue raised by AM is whether the Referee erred in failing to order that CNA pay interest to AM on the funds that CNA was required to reimburse AM.

Pursuant to Section 406.1 of the Act, 77 P.S. § 717.1, interest is payable on all due and unpaid compensation from the date each installment is due. Interest is also payable on unpaid medical expenses. *Frymiare v.*

*Workmen's Compensation Appeal Board (D. Pileggi & Sons)*, 105 Pa.Commonwealth Ct. 325, 524 A.2d 1016 (1987). AM notes that if Claimant had not received benefits until the referee rendered his decision, Claimant would have been entitled to interest on the amount owed. Without citing any authority, AM concludes that "[i]t follows that [it] ... should receive interest on the monies paid to the Claimant, which payments were later deemed to be the responsibility of another party." AM's Brief at 12.

CNA responds that Section 410 of the Act does not provide for interest as part of the award "in favor of the ... carrier not liable in the case." However, Section 406.1 of the Act does provide for payment of interest to a claimant whose employer fails to pay compensation promptly. In *Commonwealth v. Bigelow*, 484 Pa. 476, 399 A.2d 392 (1979), our Supreme Court held that where a provision exists in one section of a statute, its omission from a similar section indicates that a different intention existed.

The omission of any language regarding assessment of interest in Section 410 confirms that the legislature did not intend insurers to receive such awards. The legislature intended that claimants receive interest on compensation that is not paid promptly. It did not intend that insurers receive interest on reimbursement of payments from other insurers. Accordingly, we conclude that the referee did not err by failing to assess interest against CNA.

For these reasons, we affirm the decision of the Board.

### ORDER

AND NOW, October 13, 1995, we affirm the order of the Workmen's Compensation Appeal Board, dated December 22, 1993.