**PENSKE TRUCK LEASING,**
**Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BRUNKEL),**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 16, 2006.
Decided Oct. 19, 2006.
Reargument Denied Dec. 11, 2006.

---

Mauri L. Levy, Norristown, for petitioner.

Michael G. Dryden, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Penske Truck Leasing (Penske) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the order of a Workers' Compensation Judge (WCJ) granting a claim petition filed by William Brunkel (Brunkel) on September 8, 2003 and ordering Penske to reimburse the Teamsters Health and Welfare Fund of Philadelphia and Vicinity (Fund) $232,120 for medical bills it paid on behalf of Brunkel, with statutory interest of ten percent from January 12, 2001. Penske was directed to pay a twenty percent attorney's fee to be deducted from that amount to Brunkel's counsel.

The following questions are involved in this appeal. Penske argues that the Board erred in affirming the WCJ where Brunkel previously entered into an unappealed, binding and conclusive settlement agree-

ment; where he lacked standing to seek a recovery on behalf of his union; where it was not an employer or insurer entitled to rights of subrogation under Section 319 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671; where the union made gratuitous payments of medical bills that it was not required to make; and where the WCJ ordered payment of interest on medical bills already paid and payment of interest on all bills from the date of Brunkel's injury.

I

Brunkel testified that he was working for Penske as a truck driver responsible for driving a truck and unloading it at different locations in the course of a day. On January 12, 2001, he began work at approximately 4:00 a.m. and he was feeling fine. He drove from Penske's location in South Philadelphia to his first stop in Robesonia, Pennsylvania. When he opened the trailer door he found that the freight was all over the trailer, and he was forced to quickly restack by hand 300 to 400 cases of hotdogs, which was not a normal part of his duties and which took him an hour and a half to two hours. During the restacking he did not feel well and began to sweat. Brunkel was able to make a delivery at Quaker Valley in Philadelphia where he felt light-headed and began to sweat while unloading. He attempted to make a delivery nearby at Jetro Foods, but he continued to sweat, he felt light-headed and he experienced numbness in his left wrist.

Brunkel returned to Penske's location to speak with the dispatcher, but Brunkel collapsed with severe chest pains before reaching the dispatcher's office. Emergency medical personnel took Brunkel to St. Agnes Medical Center. He awoke two weeks later in Hahnemann University Hospital, where he remained for twenty-two days under the care of cardiologist Dr. Mark Victor. He then was in Magee Rehabilitation Hospital for seven days. While treating with Dr. Victor for his heart attack, Brunkel also treated with Dr. Mark Allen for problems with his left knee, neck and right shoulder that were not present before.

Brunkel alleged in a claim petition filed in 2001 that he sustained a work-related myocardial infarction and certain orthopedic injuries on January 12, 2001. Penske denied the claim petition and litigation ensued. The parties reached a negotiated Compromise and Release Agreement (C&R) pursuant to Section 449 of the Act, added by Section 22 of the Act of June 24, 1996, P.L. 350, 77 P.S. § 1000.5, which they presented to the WCJ. Paragraph 9 of the C&R stated:

*Employer is responsible for reasonable, necessary and related medical expenses incurred due to the work injury. As of the date of this Compromise and Release Agreement the Employer and Third Party Administrator have denied payment to providers who treated the Claimant pursuant to injuries alleged to have occurred on January 12, 2001.* The Employer is providing an additional $10,500.00 for the payment of medical bills that are outstanding which have gone unpaid to providers that have treated the Claimant. It is further agreed between the Parties that bills that have been paid by other sources neither the Employer nor Third Party Administrator, are disputed by the Employer. *Claimant reserves the right to submit bills paid by outside sources for payment to the Employer pursuant to the Act.* Following approval of the Compromise and Release Agreement further medical treatment as needed by Claim-

ant will be solely the responsibility of the Claimant, Bill Brunkel.

C&R ¶ 9, Reproduced Record (R.R.) 428a, 431a (emphasis added). Paragraph 10 of the C&R recited that Brunkel would receive $220,000. WCJ Michael Snyder examined Brunkel and approved the C&R at a hearing on October 24, 2002.

On September 8, 2003, Brunkel filed the present claim petition seeking payment for the medical expenses paid by the Fund, which Penske denied. At a hearing before WCJ Nancy Goodwin, Brunkel presented transcripts of his testimony from the first proceeding along with two depositions by Dr. Victor, a deposition by Dr. Allen and the deposition of William Einhorn, the Administrator of the Fund. Penske presented the deposition of Dr. David Lehman and documents relating to the C&R. The WCJ summarized the testimony of Dr. Victor, who stated that Brunkel was in the midst of having a heart attack when he was admitted to the hospital on January 12, 2001 and that the events and discrete episodes of that day were indicative of causality of the heart attack. He continued to treat Brunkel, who underwent a cardiac catheterization in May 2001. Dr. Allen testified that Brunkel suffered a lumbosacral strain, tendonitis of the right shoulder and synovitis of the left knee as the direct result of his collapse when he had the heart attack at work on January 12, 2001. Dr. Lehman testified that Brunkel suffered a heart attack at work. He did not believe that the work activity was unusual or caused the heart attack, although he admitted having no job description or job analysis. The WCJ found Brunkel and Drs. Victor and Allen to be credible and Dr. Lehman to be less so and

found that Brunkel suffered a work-related injury.

The WCJ summarized and found credible the testimony of Einhorn. He stated that the Fund pays medical expenses on behalf of eligible participants; Brunkel was an eligible participant in January 2001. The Fund is an entity separate from the unions that participate and the employers that contribute pursuant to negotiated agreements. The Fund paid Brunkel's medical expenses of $232,120 following his heart attack because Penske denied responsibility for the claim (Blue Cross pays charges initially; the Fund reimburses Blue Cross on a "cost-plus" basis). The WCJ stated that the Fund and Brunkel agreed that the Fund would be reimbursed should Brunkel recover through the workers' compensation system and that the Fund had a right to be paid in the same way that Brunkel had a right to be paid for medical expenses following his work injury until October 24, 2002.

The WCJ concluded that Brunkel was entitled to be reimbursed for the medical expenses paid on his behalf by the Fund. She noted the subrogation agreement that Brunkel entered into as a condition of membership and concluded that the Fund was entitled to payment of medical expenses of $232,120 plus ten percent interest as of January 12, 2001. On Penske's appeal the Board affirmed. It noted that the lump-sum payment to Brunkel of $220,000 was for compensation and for future medical benefits. The Fund paid a substantial portion of Brunkel's medical expenses, but the parties did not resolve the issue of reimbursement for the Fund in the C&R—they expressly left the issue open as stated in Paragraphs 9 and 10 of the C&R.[1]

1. The Board noted the WCJ's observation that the statement in Paragraph 4 of the C&R that Brunkel suffered a heart attack while at work was not an admission of responsibility and that the WCJ therefore considered medical testimony on the issue. The WCJ credited

■ Section 449 of the Act governs the parties' right to compromise and release workers' compensation claims; once approved by a WCJ a valid C&R is final and binding upon the parties. *Farner v. Workers' Compensation Appeal Board (Rockwell Int'l)*, 869 A.2d 1075 (Pa. Cmwlth.), *appeal denied*, 586 Pa. 730, 890 A.2d 1061 (2005). Penske argued before the Board that the WCJ erred in failing to determine that Brunkel was estopped from making any claim for additional medical benefits under the C&R. Because Paragraph 9 of the C&R expressly reserved the right to Brunkel to "submit bills paid by outside sources for payment to the Employer pursuant to the Act" and the right to Penske to dispute such bills, the Board rejected this argument and held that it was Penske that was estopped from using the C&R as a shield against the claim for the said medical bills.

■ As for the claim that the Fund may not be reimbursed because it is not an employer or insurance company as is required for subrogation under Section 319 of the Act, the Board stated that a claimant is entitled to recover through workers' compensation proceedings any medical expenses incurred by reason of a work injury, even if they were paid by an independent source, citing *Frymiare v. Workmen's Compensation Appeal Board (D. Pileggi &*

*Sons)*, 105 Pa.Cmwlth. 325, 524 A.2d 1016 (1987). When an employee's union pays medical expenses it is entitled to reimbursement and interest. *Cook v. Workmen's Compensation Appeal Board (Level Line Penn East)*, 115 Pa.Cmwlth. 386, 540 A.2d 344 (1988).[2]

## II

■ Penske first contends that the WCJ erred by entertaining Brunkel's claim petition when the C&R and related release and stipulations were conclusive and binding and barred any further workers' compensation claims by Brunkel. It argues that the language of Section 449 of the Act does not include a mechanism for reopening a final C&R unlike, for example, Section 413(a), 77 P.S. § 771, which provides for reopening notices of compensation payable and agreements, because the "legislature intended that a C&R should be on an equal footing with civil settlements, which are based on a public policy that encourages settlements and stresses finality." *Stroehmann Bakeries, Inc. v. Workers' Compensation Appeal Board (Plouse)*, 768 A.2d 1193, 1196 (Pa.Cmwlth. 2001). In the civil context, a party seeking to invalidate a release must show fraud or mutual mistake by clear, precise and convincing evidence. *Holt v. Department of Public Welfare*, 678 A.2d 421 (Pa.Cmwlth. 1996). Penske asserts that the C&R lan-

---

and accepted the testimony of Brunkel's medical witnesses and rejected that of Penske's medical witness, which provided substantial evidence to support the WCJ's findings. Further, the WCJ credited and accepted the unrebutted testimony of Einhorn and found that the Fund was required to and did pay for reasonable and necessary medical expenses for Brunkel's heart attack because Penske initially denied that the injury was work related, and she concluded that the Fund had the same right to recover as Brunkel.

2. The Court's review is limited to determining whether there was a constitutional violation

or an error of law, whether a practice or procedure of the Board was not followed or whether the findings of fact are not supported by substantial evidence in the record. *Matticks v. Workers' Compensation Appeal Board (Thomas J. O'Hora Co., Inc.)*, 872 A.2d 196 (Pa.Cmwlth.2005). The WCJ has sole power to evaluate the evidence and to determine witness credibility, and he or she may accept or reject the testimony of any witness in whole or in part. *Miller v. Workers' Compensation Appeal Board (Airborne Freight)*, 817 A.2d 1200 (Pa.Cmwlth.2003).

guage is unambiguous in reciting that bills paid by other providers "are disputed" and that the C&R plainly left for another day and to another forum consideration of whether Penske had an obligation to reimburse the third-party payor.

Penske's additional argument is that Brunkel seeks review of the C&R after the period for appealing from the order that approved it. It contends that the WCJ erred by concluding that the C&R left the door open for Brunkel to file a claim in the future, and it quotes the Release executed by Brunkel at the time of the C&R, which states: "I further agree and represent that I have not filed, and will not file, any action against Employer in any court of law or agency under any such common law or federal, state or local law or regulation." Release, R.R. 423a. Further, the Stipulation signed in conjunction with the C&R states in Paragraph 9, R.R. 419a: "It is hereby stipulated and agreed between the Parties that the Claimant understands that the Compromise and Release is a complete waiver of any rights he has in the present or in the future under the Workers' Compensation Act" and that he will not be able to pursue Penske or the Third Party Administrator for payment of indemnity or medical benefits after approval of the C&R.

Next Penske argues that the WCJ erred in entertaining the petition because Brunkel had no standing to seek a recovery for his union. Section 410 of the Act, 77 P.S. § 751, provides only that "the employe or his dependents may present a claim petition...." Apart from the procedures under regulations for a claimant to file an initial request for utilization review on be-

half of a medical provider, there are no provisions allowing a claimant to file a petition to recover for another party. Penske cites *Frymiare* for the proposition that if subrogation rights exist under Section 319, only an employer or insurer is entitled to them.[3]

Penske next quotes the second paragraph of Section 319 of the Act:

Where an employe has received payments for the disability or medical expense resulting from an injury in the course of his employment paid by the employer or an insurance company on the basis that the injury and disability were not compensable under this act in the event of an agreement or award for that injury the employer or insurance company who made the payments shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties or is established at the time of hearing before the referee or the board.

Penske relies upon *Workmen's Compensation Appeal Board v. Branch Motor Express*, 18 Pa.Cmwlth. 262, 334 A.2d 847 (1975), where a truck driver became totally disabled due to an accident in the course of his employment. The driver's union paid compensation out of a non-occupational health benefit fund, and the referee awarded subrogation rights to the union. The Court agreed that the referee erred, stating that the plain language of Section 319 afforded rights of subrogation to employers or insurance companies that made payments to injured employees and that the record failed to disclose that the non-party, unrepresented union was either.

---

3. In *Frymiare* medical expenses later determined to be compensable initially were paid under a health and accident policy incident to the claimant's wife's employment. The Court held that a workers' compensation insurer is responsible to pay medical expenses of a claimant injured in the course of employment, which obligation is not avoided even where some other source may initially have defrayed such costs, stating that even the possibility of a double recovery would not defeat the responsible insurer's obligation.

Einhorn agreed on cross-examination that the Fund is not an insurance company chartered and regulated in Pennsylvania. Einhorn testified that the Fund makes retroactive assessments against the employers whose employees receive benefits, so the employers ultimately fund the Fund. Einhorn Deposition, p. 56, R.R. 296a. Penske relies on the holding in *Holgate v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 104 Pa.Cmwlth. 32, 521 A.2d 82 (1987), that a union is not an insurer under Section 319.[4] It contends that even assuming the Fund was eligible for reimbursement as an insurer, the WCJ erred in awarding the Fund subrogation because it was not a party and failed to assert its rights with due diligence during the proceedings as required by *Workmen's Compensation Appeal Board v. Olivetti Corp. of America*, 26 Pa.Cmwlth. 464, 364 A.2d 735 (1976).

Penske's final contention concerning the payments made by the Fund is that they were gratuitous and not required under its plan. The plan provides that the Fund must pay certain medical expenses but contains an exception for medical expenses that arise from the job, regardless of whether a claim is accepted or rejected as compensable under the Act. Einhorn Deposition, pp. 25–26, R.R. 265a–266a. Einhorn did not admit that the Fund should not have paid based on the language of the claim, as Penske asserts, but he did agree that the plan had the exception described and that the Fund would be within its rights to refuse to pay if a participant submitted a claim for services relating to something that happened on the job. *Id.* pp. 26–27, R.R. 266a–267a.

Brunkel in response first asserts that the decision of the WCJ and the Board to permit the claim petition to go forward is supported by the plain language of Paragraph 9 of the C&R: "Claimant reserves the right to submit bills paid by outside sources for payment to the Employer pursuant to the Act." Brunkel is correct in his assertion that the Board properly held that through this language the parties expressly left open the issue of liability for payments made by the Fund in connection with Brunkel's heart attack. The quoted language from Paragraph 9 authorizes Brunkel to advance a claim for medical bills in a workers' compensation setting, and in view of the exclusivity of the workers' compensation remedy, *see* Section 303(a) of the Act, 77 P.S. § 481(a), no other forum may decide the issue. Due to Penske's express agreement, the Court agrees that Penske was estopped from attempting to use the C&R as a shield against the claim for medical bills.

Next Brunkel argues that the Board correctly affirmed the decision of the WCJ ordering Penske to pay the bills at issue. In *Frymiare* it was held that a defendant may not avoid its statutory responsibility to pay compensable medical expenses pursuant to the Act because they were paid by an outside source after the defendant filed a notice of compensation denial. In *Frymiare* the Court held that the defendant workers' compensation insurer was responsible for paying medical expenses even though the claimant's wife's insurer initially defrayed the expenses and was not pursuing subrogation. The Court stated that it would be no different if the wife had

---

**4.** In *Holgate* the Court held that the record was not sufficiently developed to determine whether the Police and Fire Medical Association, which had paid a medical bill related to a work-related condition, was a health care insurer providing health insurance to firemen who elected its coverage as it claimed or was simply an adjunct of the union as the referee found. The Court remanded for an evidentiary hearing to determine whether it qualified as an insurer.

advanced those payments from her own personal resources. As a final matter, Brunkel maintains that he and the Fund acknowledge that the Fund is not an employer or insurer in this matter; that unlike the circumstances in *Branch Motor Express* and *Holgate*, which involved subrogation claims, the claimant here is pursuing payment of compensable medical expenses; and that in *Frymiare* the Court actually allowed a double recovery so as not to permit the employer to escape its responsibility to pay medical expenses.

■ Based on its review of the record and the controlling authority, the Court concludes that the WCJ and the Board did not err in requiring Penske to pay medical expenses for injuries that were properly determined to be compensable. Where the WCJ determined based upon substantial evidence that the medical bills related to a compensable injury, Penske is responsible to pay them. It does not matter that another source initially paid the medical bills. *Frymiare*; *see also Venezia Hauling v. Workers' Compensation Appeal Board (Inservco Ins. Servs.)*, 809 A.2d 459 (Pa.Cmwlth.2002) (holding that where employer initially paid wage loss benefits and medical expenses out of its own funds for claim later determined to be the responsibility of its insurer, employer was entitled to subrogation of amounts it paid under Section 319 of the Act). Similarly, whether the Fund was obligated to make the payments under the terms of its plan is of no moment to Penske. Once Penske's liability was properly established it was responsible to pay.

The final issue concerns interest. On reconsideration following initial denial of Penske's request for supersedeas, the Court granted Penske's petition only as to the payment of interest. Penske stresses that it is unclear as to whom interest should be paid, whether to Brunkel or to the Fund. Although Penske previously argued that the Fund is not an insurer, for this purpose it contends that the situation is analogous to one in which one insurance carrier is required to reimburse another following the disposition of a claim where an order under Section 410 of the Act is in place, where the only issue is which of two or more entities is liable and the WCJ orders partial payments by all until that matter is decided. In that situation it has been held that interest is not due as between insurers. *Cedar Farms, Inc. v. Workmen's Compensation Appeal Board (Santiago)*, 665 A.2d 1326 (Pa.Cmwlth. 1995). Penske also points out that the medical bills were promptly paid here, and it asserts that if the Fund is entitled to reimbursement under Section 319 it has no right to interest. If interest ultimately must be paid to any person or entity, it must be calculated properly, *i.e.*, there should be no interest award as of a date when the bills were not actually incurred. Furthermore, the WCJ made no findings as to the date the Fund paid the medical bills. In reply, Brunkel refers to Section 406.1(a) of the Act, added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 717.1(a), which unequivocally provides that "[i]nterest shall accrue on all due and unpaid compensation at the rate of ten per centum per annum."

■ The Court observes that it declined in *Venezia Hauling* to apply the holding of *Cedar Farms* in a context other than a battle between insurers under Section 410 and held that interest was due on the wage loss benefits and medical expenses initially paid by the employer. In *Venezia Hauling* the Court cited *Frymiare* and *Glinka v. Workmen's Compensation Appeal Board (Sears, Roebuck & Co.)*, 75 Pa.Cmwlth. 504, 462 A.2d 909 (1983), for the proposition that for the purpose of assessing interest under Sec-

tion 406.1(a), "compensation" includes both indemnity benefits and medical expenses. Therefore, under *Frymiare* interest is assessed on medical bills, and under *Cook* interest is assessed no matter who pays the bills initially. In *Good Shepherd Workshop v. Workmen's Compensation Appeal Board (Caffrey )*, 148 Pa.Cmwlth. 164, 609 A.2d 915 (1992), the Court rejected the argument advanced by Penske that Section 319 does not provide for interest, reasoning that Section 406.1(a) expressly does provide for interest on "all due and unpaid compensation" and that this language does not limit interest to compensation due directly to the claimant.

■ The Court over many years has held that where another entity has paid work-related medical expenses initially, that entity is entitled to reimbursement from the entity responsible to pay workers' compensation, with interest. *Glinka; Frymiare; Cook; Good Shepherd Workshop; City of Monessen School District v. Workmen's Compensation Appeal Board (Hays )*, 155 Pa.Cmwlth. 56, 624 A.2d 734 (1993); *Gattuso v. Workmen's Compensation Appeal Board (McKeesport Candy Co.)*, 166 Pa.Cmwlth. 232, 646 A.2d 611 (1994); *Lamberson v. Workmen's Compensation Appeal Board (U.S. Silica)*, 654 A.2d 668 (Pa.Cmwlth.1995); *Venezia Hauling*. The Court accordingly holds that Penske is liable for payment of interest on the medical bills to the Fund, the entity that defrayed the medical bills initially.

■ The interest, however, must be calculated properly. Section 406.1(a) provides for interest "on all due and unpaid compensation at the rate of ten per centum per annum." As the above cited cases illustrate "compensation," in the sense of payment of wage loss or medical benefits by the employer or insurer responsible to pay such compensation, remains "due and unpaid" until it is paid by the proper entity, even though some other entity made payments initially. Interest on medical bills accrues from the date the bills are presented for payment. *Frymiare; Lucey v. Workmen's Compensation Appeal Board (VY–CAL Plastics )*, 701 A.2d 637 (Pa.Cmwlth.1997), *rev'd on other grounds*, 557 Pa. 272, 732 A.2d 1201 (1999). Therefore, the WCJ erred in ordering interest on all medical expenses from the date of injury. For that reason the Court vacates in part the Board's order upholding the interest award against Penske and remands this matter solely for the WCJ to make necessary findings of fact and conclusions of law to allow for a proper calculation of interest. The Court otherwise affirms the order of the Board directing Penske to reimburse the Fund $232,120 for the medical bills that it paid on behalf of Brunkel.

### ORDER

AND NOW, this 19th day of October, 2006, the order of the Workers' Compensation Appeal Board is vacated insofar as it affirmed the award of interest on medical bills calculated from the original date of injury rather than from the time that the bills became due and owing, and the case is remanded for a correct determination of the interest due. In all other respects the decision of the Board is affirmed. The partial grant of supersedeas pending resolution of the petition for review is lifted.

Jurisdiction is relinquished.