514 A.2d 246

Phyllis B. Humphrey, Petitioner *v.* Workmen's Compensation Appeal Board (Supermarket Service), Respondents.

Submitted on briefs May 15, 1986, to Judges BARRY and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Howard M. Spizer,* with him, *Paul Philip Ackourey,* for petitioner.

*Kathleen A. Lenahan, Lenahan and Dempsey, P.C.,* for intervening respondent, Travelers Insurance Company.

OPINION BY JUDGE BARRY, August 19, 1986:

Phyllis B. Humphrey, the claimant, appeals an order of the Workmen's Compensation Appeal Board (Board) which affirmed a decision of the referee awarding Travelers Insurance Company, the intervening respondent, $9,503.48 as subrogee to certain benefits due the claimant as the result of a work related injury.

In April of 1977, the claimant injured her back while on the job in the employ of Supermarket Service. The employer filed a notice of compensation payable. Shortly thereafter, the employer filed a termination petition, alleging that the claimant had fully recovered. The employer included an affidavit of recovery with the termination petition, acting as an automatic supersedeas. The claimant then filed a claim petition, alleging that she was still totally disabled.

During the time when hearings were being conducted on the matter, certain medical expenses of the claimant were paid by Travelers, which was the sickness and accident carrier for the *employer of the claimant's husband.* Following all of the hearings, the referee ruled that the claimant had been totally disabled from

April 14, 1977 until June 28, 1979. The referee further ruled that the claimant was still partially disabled. As part of his award, the referee held that the employer was entitled to a credit for all medical bills which had been paid by Travelers. On appeal, the Board reversed that portion of the award granting the employer a credit and remanded the matter to the referee.

Section 319 of the Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §671, provides:

> Where a compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe . . . against such third party to the extent of the compensation payable under this article by the employer. . . . Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith . . . and shall be treated as an advance payment by the employer on account of future installments of compensation.
>
> Where an employe has received payments for the disability or medical expense resulting from an injury in the course of his employment paid by the employer or an insurance company on the basis that the injury and disability were not compensable under this act in the event of an agreement or award for that injury the employer or the insurance company who made the payments shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties or is established at the time of hearing before the referee or the board.

Before proceeding further, we believe two points must be discussed to assist in an understanding of the

questions involved. The first point involves the two paragraphs of Section 319. The first paragraph is applicable only in those situations where a third party, unrelated to the employer, has been wholly or partially responsible for causing the work related injury. No such third party being involved presently, that paragraph is inapplicable. The second paragraph applies to the present situation, *i.e.*, where an employer or insurance company has made payments for either disability or medical expenses under some non-workmen's compensation program with subsequent determination that the payments were compensable under the Act.

The second preliminary point warranting discussion concerns the distinction between "subrogation" and the concept of an employer receiving a "credit" for payments made prior to a determination that an injury was compensable under the Act. In *Workmen's Compensation Appeal Board v. Olivetti Corp. of America,* 26 Pa. Commonwealth Ct. 464, 364 A.2d 735 (1976), the claimant had received monthly payments from Aetna Life and Casualty Co., the *employer's* sickness and accident insurance carrier. When the referee found that the injury there was work related, the employer and its workmen's compensation carrier, Travelers Insurance Co., argued that either Aetna was entitled to subrogation or that Travelers was entitled to a credit for the sickness and accident benefits which had been paid. We rejected any subrogation rights in favor of Aetna, because it had not asserted its claim for subrogation until that case was on appeal to this Court. We allowed a credit, however, finding that the payments on the sickness and accident policy were payments in lieu of compensation rather than a benefit which had accrued to the claimant because of past services provided by the claimant to the employer.

Although the concepts of subrogation and credit have many similarities, they are distinguishable because a credit does not have its genesis in a workmen's compensation setting in Section 319 of the Act. In *Temple v. Pennsylvania Department of Highways,* 445 Pa. 539, 544, 285 A.2d 137, 140 (1971), the Supreme Court stated, "[T]he provision relied upon to support the · so-called 'in lieu of compensation' credits as against workmen's compensation payments is in Section 315 of the Act [77 P.S. §602]. . . ." (footnote omitted). In *Chase v. Emery Manufacturing Co.,* 271 Pa. 265, 268-69, 113 A. 840, 841 (1921), the Supreme Court interpreted Section 315, stating:

> Does Section 315 bar the claim? The latter part of this section reads: 'Where, however, payments of compensation have been made in any case, said limitations shall not take effect until the expiration of one year from the time of the making of the last payment.' This section was placed in the act to prevent imposition upon unwary employees; that is, to prevent money being paid for a period of time after an injury under some verbal arrangement, causing the employee to neglect presenting the agreement in some form as provided by law. The year limitation, under the act, would begin to run from the last payment. On the other hand, employers should not be subjected to imposition through faked or unlawful claims, *or claims for illness that have no causal connection with the injury received in the course of employment;* therefore the act says 'payment of compensation,' which means an amount received and paid as compensation for injury or death of an employee occurring in the course of employment. *It must clearly appear the amounts were so paid and received as com-*

*pensation under the act, and not as wages for employment, and the disability or further disability must be attributable to an injury for which such compensation had been paid.* (Emphasis added.)

Although the statement of the facts in *Chase* is rather sketchy, the Court allowed a credit for payments made in lieu of compensation prior to an award of compensation by the referee. Therefore, a credit is available where payments are (1) made by an employer or its insurer, (2) for an injury and/or subsequent disability arising in the course of employment, where (3) the payments are not wages for employment. As the payments in this case were made by an insurance company unrelated to the claimant's employment, the Board was correct in reversing the referee's original order granting the employer a credit for the payments made by the Travelers. With this background in mind, we will proceed to the allegations of error of the claimant.

She first argues that Travelers failed to exercise due diligence in asserting its subrogation interest. She next argues that Travelers explicitly waived its subrogation right when it informed her that it would not seek subrogation from the employer. Before reaching either of these issues, we must first address an assertion posited by Travelers, *i.e.*, that, because the medical expenses in question were paid by Travelers directly to the health care providers, claimant is not entitled under any set of circumstances to receive this money from her employer, the party ultimately responsible for the bills.

## I.

In *General Tire and Rubber Co. v. Workmen's Compensation Appeal Board*, 16 Pa. Commonwealth Ct. 473, 332 A.2d 867 (1975), the claimant, who was disabled as the result of a work related injury had during the same period been receiving group health benefits

for a condition unrelated to the work related injury. The employer argued that it was entitled to subrogation in the amount of those group health benefits paid. As we stated, "General fails to direct us to any authority or advance any reason why it is against public policy or prohibited to permit simultaneous recovery under the Pennsylvania Workmen's Compensation Act and a private health insurance program." *Id*. at 479, 332 A.2d at 871. We held that the subrogation provisions of Section 319 of the Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §671, were inapplicable because the conditions under which the claimant was receiving these benefits were not the result of a work related injury. The Board relied upon the above quoted portion of *General Tire* in reversing the referee's first order.

Travelers argues that *General Tire,* which permits simultaneous recovery in certain instances, is inapplicable for the reasons relied upon in *Simpson v. Workmen's Compensation Appeal Board,* 48 Pa. Commonwealth Ct. 51, 408 A.2d 1186 (1979). There, an injury was determined to be work related and the employer was granted a credit for medical and hospital expenses paid by Blue Cross and Blue Shield coverage afforded all employees under a collective bargaining agreement. As we stated:

> [W]hether or not [Blue Cross and Blue Shield] payments may be credited against an employer's workmen's compensation obligations 'depends not on whether the payments are categorized as a benefit of a collective bargaining agreement, but rather whether the payments were made as wages for work performed or in relief of the employee's incapacity to labor.' Steinle v. Workmen's Compensation Appeal Board, 38 Pa. Commonwealth Ct. 241, 246, 393 A.2d 503, 506

(1978). The criterion, then, for allowing a credit is whether the claimant would be required to 'deplete benefits . . . which could have been used for other purposes.' [Olivetti, 26 Pa. Commonwealth Ct. at 470, 364 A.2d at 738]. Here, petitioner was not required to deplete benefits that would have been otherwise due him or which could have been used for other purposes. Thus, the employer is entitled to the credit.

48 Pa. Commonwealth Ct. at 43, 408 A.2d at 1187. The claimant there argued that the rule in *General Tire* permitting simultaneous recovery from both an employer and a private health insurance plan was applicable. We distinguished *General Tire,* stating:

[H]ere [the claimant] failed to provide any evidence that his bills were paid by a private insurance plan for which he paid premiums. Furthermore, the Board found as a fact that BC & BS coverage was provided by the employer, a finding which was supported by the record. A further distinguishing factor is that, in General Tire, the group health benefits received by claimant were for [illnesses] which did not result from an injury in the course of his employment.

48 Pa. Commonwealth Ct. at 53-54, 408 A.2d at 1187-88.

Travelers acknowledges that *Simpson* does not directly support its argument that the claimant cannot have a double recovery. It argues, however, that the distinguishing factors of *Simpson* are equally applicable here, thereby rendering *General Tire* inapplicable. We do not agree.

It is true that the claimant in this case is attempting to obtain a double recovery for an injury which is work related. Further, the claimant here did not pay any premiums for the sickness and accident coverage from

her own funds. We point out that the opinion in *General Tire* does not make clear who paid for the coverage there. In our view, however, these factors are secondary to the crucial factor relied on in *Simpson, i.e.,* the employer there paid for the group health benefits. In the present case, the sickness and accident policy under which the claimant's medical expenses were paid *were in no way related to the employment relationship between the claimant and her employer.* All of the cases cited by way of analogy in support of Travelers' position involve situations where the injured party was attempting to obtain simultaneous recoveries for compensable work related injuries from different benefits which were provided by the employer. Otherwise, the concept of depletion of benefits in deciding whether a credit is applicable would make no sense unless the benefits in question are being provided by the employer. Accordingly, we remain unconvinced by Travelers' argument and believe that the rule of *General Tire* permitting simultaneous recovery from an employer and a private health plan could permit the claimant to collect from the employer and retain the $9,503.48, the sum which Travelers paid to the health care providers.

Travelers also argues that the claimant does not have standing to contest an order requiring the employer to reimburse Travelers for the medical bills paid. Under Section 306(e) of the Act, 77 P.S. §531, the employer is responsible for medical bills incurred as the result of a work related accident. Because those bills were paid by Travelers in this case in no way negates the employer's responsibility. As we have already determined that it is possible that the claimant could collect a simultaneous recovery from the employer and Travelers, claimant stands to benefit in the amount of over $9,500.00. Under these circumstances, the claimant clearly has standing to contest the Board's order requiring the em-

ployer to reimburse Travelers rather than paying this money to the claimant.

In summary, we reject, on the authority of *General Tire*, Travelers' initial argument that claimant is not entitled under *any* set of circumstances to receive a double recovery. As our initial discussion suggests, however, a right of subrogation on Travelers' part exists under the second paragraph of section 319, *if* that right is determined to have been properly established.

## II.

In this respect, and as previously mentioned, the claimant raises two issues. First, she argues that Travelers has failed to exercise due diligence in asserting its subrogation interest. Second, she argues that Travelers explicitly waived the right to assert such interest when it informed her in writing that it would not press its subrogation claim. Unfortunately, we are unable to decide either of these issues on the present record and a remand is necessary for the reasons that follow.

With regard to the claimant's second allegation of error, she attempted to offer into evidence two letters to her written by representatives of Travelers which allegedly showed an explicit waiver of Travelers' subrogation interest. This evidence was proffered at a March 5, 1982 hearing before the referee. When counsel for Travelers objected to the admission of these letters, an off-the-record discussion was held. The referee then never ruled on the admission of these letters and they are not part of this record. The claimant alleges that it was based on the representation in these letters that convinced her to appeal the first award of the referee granting the employer a credit for the payments made by Travelers. Without the letters being a part of the record, we are unable to decide the validity of the claimant's argument.

Claimant also argues that Travelers failed to exercise due diligence in asserting its subrogation interest. In *Olivetti*, we held that a subrogation claim pressed for the first time on appeal by the employer when the subrogee was not a party to the appeal had to be rejected. Therefore, a subrogation claim must be asserted during the pendency of workmen's compensation proceedings. Here, the claim was asserted during the pendency of these proceedings. However, in *Travelers Insurance Company v. Hartford Accident and Indemnity Co.*, 222 Pa. Superior Ct. 546, 294 A.2d 913 (1972), the court held that subrogation, being an equitable concept, was not self-executing and had to be asserted with reasonable diligence. As proceedings under the Act sometimes are of an undesirable duration, we can foresee situations where a claim could be asserted during the pendency of proceedings but would, nonetheless, not be asserted with reasonable diligence. Here, the claim was not asserted until some time after the remand, over four years after the incident and over two years after Travelers had paid these bills. We do not know, however, when Travelers was or should have been aware that the injury might have been compensable under the Act and, without this knowledge, we are unable to decide whether Travelers exercised the required diligence in asserting its claim.

For all the foregoing reasons, a remand is required.

### ORDER

Now, August 19, 1986, the November 4, 1984, order of the Workmen's Compensation Appeal Board, at No. A-80340, is vacated and the matter is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.