# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eileen Walden,                :
          Petitioner     :
                :
          v.           :   No. 1335 C.D. 2020
                :   Submitted: August 27, 2021
Public Utility Commission,    :
          Respondent   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge[1]
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER            FILED: April 18, 2022

      Eileen Walden (Petitioner), pro se, petitions for review of the November 19, 2020 Opinion and Order of the Public Utility Commission (Commission) denying in part Petitioner's Exceptions, adopting the Administrative Law Judge's (ALJ) Initial Decision as modified, and denying and dismissing her Amended Formal Complaint (Amended Complaint).[2] In the Amended Complaint, Petitioner challenged her high electricity bills from the Philadelphia Electric Company

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

[2] The Commission granted Petitioner's Exceptions "in limited part" and modified the Initial Decision in ways not relevant to the issues on appeal. (Commission Opinion and Order (Op.) at 2.)

(PECO)[3] during the period between November 2017 and April 2018, arguing that PECO incorrectly billed her because, during this period, there was an unprecedented spike in kilowatt hour (kWh) usage that was unrelated to her actual usage. The ALJ concluded that Petitioner had not met her burden of proving that her bill was inaccurate or too high or that PECO had violated the Public Utility Code (Code),[4] and/or the Commission's Regulations or orders and, therefore, denied and dismissed Petitioner's Amended Complaint. (Initial Decision, Conclusion of Law (COL) ¶ 6 & Order.) On appeal, Petitioner asserts that she presented substantial evidence showing that PECO improperly billed her given her historical electric usage and that the Commission erred in accepting PECO's contrary evidence as it was neither factually nor legally sound. Petitioner further argues her due process rights were violated when the ALJ did not hold a prehearing conference, which would have assisted in the exchange of evidence and aided Petitioner in presenting her case.

Additionally, Petitioner filed an Application for Relief requesting that the Court consider certain documents omitted from the record on appeal based on evidentiary rulings by the ALJ, their alleged untimeliness, or their being submitted after the hearing.[5] Therein, Petitioner requests that the Court consider: Exhibits 2 and 7; her replies to PECO's Answer to the Amended Complaint; an October 23, 2019 letter to the ALJ requesting reconsideration of the ALJ's evidentiary ruling regarding Exhibits 2 and 7; an October 24, 2019 letter to the ALJ in which Petitioner claims she requested that PECO's Answers to Interrogatories be included in the

---

[3] PECO is not a party to this matter.

[4] 66 Pa.C.S. §§ 101-3316.

[5] By order dated May 25, 2021, the Court denied Petitioner's Application for Relief. Thereafter, Petitioner filed an Application for Reconsideration/Reargument requesting the Court to reconsider its May 25, 2021 order. The Court granted reconsideration and allowed the parties to file supplemental briefs on this issue by order dated June 29, 2021.

record; and an October 28, 2019 follow-up letter to the ALJ. The Commission filed an answer and an Application to Strike, seeking to strike certain portions of Petitioner's filings that refer to the omitted documents and the facts alleged therein.

## I. BACKGROUND

### A. *Factual Allegations and Pleadings*

Petitioner receives gas and electricity service from PECO at her residence and has done so for years. Between November 2017 and April 2018, Petitioner noticed that her kWh usage of electricity was unusually high based on her historical usage. On January 5, 2018, Petitioner contacted PECO to dispute the amounts billed for electricity usage, claiming they were too high. (Reproduced Record (R.R.) at 20a, 40a.) As a result, PECO sent a technician (Technician) to investigate the issue on January 23, 2018. Technician performed a visual inspection of and various tests on Petitioner's smart meter (meter), including a drop load test that idled the meter and a passing load test with a space heater, to determine the meter's accuracy. (*Id.*) Based on this inspection, Technician concluded that the meter was accurate. During this visit, Petitioner told Technician that she does not use space heaters for long periods of time and that these usage amounts were unusual for her. As a result, PECO issued a one-time courtesy adjustment from 2,287 kWh to 800 kWh, thereby reducing Petitioner's bill from $323.56 to $118.65. (*Id.*). PECO issued a utility report on January 29, 2018, summarizing the above history, to which Petitioner responded on February 6, 2018, challenging the validity of the stated findings and the method used to determine the meter's accuracy, and questioning whether a security breach was responsible for the unexplained spike in kWhs. (*Id.* at 20a, 40a.)

3

Subsequently, Petitioner filed a formal dispute with PECO on March 11, 2018, disputing, among other things, the "validity of the tests used to determine the meter's accuracy and the meter multiplier that establishes that the meter reading is a calculated result." (*Id.* at 8a, 42a-46a.) PECO sent another technician to Petitioner's residence on April 13, 2018. (*Id.* at 64a.) During this visit, the technician inspected the meter, dropped the load and idled the meter to verify the accuracy of the meter, and performed a passing load test with one of Petitioner's space heaters, which registered a usage of 1,080 watts out of 1,500 watts. (*Id.*) Petitioner's meter was found to be 99.98% accurate on the first test and 99.96% accurate on the second test. (*Id.*)

On August 22, 2018, Petitioner received a 10-day shutoff notice for payment of $635.53, which she paid on September 1, 2018. (*Id.* at 8a.) On the same date, Petitioner filed an informal complaint with the Commission's Bureau of Consumer Services (BCS). (*Id.*) On September 6, 2019, the BCS issued its decision finding that Petitioner's bills were correct as rendered and that the meter tested within regulatory tolerances and, accordingly, closed the case. (*Id.* at 21a.)

On July 5, 2019, Petitioner filed a Formal Complaint against PECO with the Commission to dispute her high bills. (Supplemental Reproduced Record (S.R.R.) at 0097b.) Therein, Petitioner averred that PECO's smart meter registered kWh usage that far exceeded her prior billing cycles "without any change in electrical connections or their use that justifies or supports [this increase]." (*Id.* at 0099b.) Petitioner explained that "[o]ver the course of more than a decade, [PECO's] billing records establish a pattern of usage that directly contradicts the accuracy of the meter readings reported for the Nov[ember] 2017 thr[ough] Apr[il] 2018 billing cycles." (*Id.*) Petitioner noted that she has a gas-powered furnace and that PECO's billing

4

records show that the pattern of gas usage remained consistent "with prior billing[] [periods] during the period in question and that consistency argues against the kWh reported on the Nov[ember] 2017 [through] Apr[il] 2018 bills." (*Id.*) As relief, Petitioner requested the return of the $635.53 payment plus interest, that late fees be removed from her current billings, and any additional compensation to which she may be entitled. (*Id.* at 0102b.)

PECO filed its Answer on July 18, 2019, denying Petitioner's material allegations. (*Id.* at 0120b-22b.) PECO stated that, on April 13, 2018, its technician visited Petitioner's property to verify the meter and obtained an additional meter reading that verified the accuracy of the last billed meter reading. (*Id.* at 0120b.) The technician also "performed a passing load test to determine the accuracy of the meter[ and] . . . an instrument meter test[, which] confirmed the meter is operating within . . . Commission and PECO guidelines." (*Id.* at 0121b.) Thus, the technician determined Petitioner's meter was accurate and she was properly billed for her usage.

Petitioner filed the Amended Complaint on August 22, 2019, adding averments regarding her informal complaint to the Bureau of Consumer Services and its decision. The Amended Complaint also questioned the security of the smart meters and PECO's ability to communicate with the meter and, potentially, to "access and manipulate the electrical connections of its customers." (R.R. at 9a.) PECO filed its Answer to the Amended Complaint on September 6, 2019, denying Petitioner's material allegations, and requesting that the Amended Complaint be

denied. (*Id.* at 10a-12a.) Petitioner submitted replies to PECO's Answer dated October 13 and 15, 2019.[6] (*Id.* at 26a-34a.)

Petitioner's Amended Complaint was scheduled for a hearing before an ALJ on September 9, 2019, but was continued at Petitioner's request. The hearing was rescheduled to October 23, 2019.

### B. Hearing Before the ALJ

At the hearing, Petitioner testified on her own behalf and offered seven exhibits to support her claim that PECO improperly billed her between November 2017 and April 2018. (S.R.R. at 0003b-5b.) Initially, Petitioner inquired about responses to interrogatories she had served on PECO that she had claimed to not yet have received. (*Id.* at 0007b.) PECO responded that it had provided its responses by email the day before the hearing, which was 20 days after its receipt of the interrogatories. (*Id.* at 0007b-8b.) Petitioner testified about the size of her residence, her appliances, her historical usage of electricity, and what led her to believe that she was being improperly billed by PECO. (*Id.* at 0012b-13b, 0023b-28b.) Petitioner acknowledged that she had two space heaters but stated she only used one of them at a time. (*Id.* at 0028b, 0034b.) Petitioner indicated there was no change in her usage over the period in question that would support the usage claimed by PECO in her bills and questioned whether the tests performed by PECO's technicians actually addressed the issue and if there was some kind of manipulation of her meter. (*Id.* at 0013b-15b, 0032b-33b.) Petitioner testified that on or around February 14, 2018, she shut everything off in the house and the meter read an

---

[6] These documents were identified as Petitioner's Exhibits 2 and 7 at the hearing and their admission into the evidentiary record was denied by the ALJ. As these are part of the Application for Relief, we note only, at this point, that they were filed.

additional 10 kWh, which she could not understand. (*Id.* at 0014b.) Petitioner acknowledged that PECO gave her a credit of 800 kWh and that her usage returned to "normal" in May of 2018. (*Id.* at 0013b, 0038b-39b.) Petitioner introduced a number of documents into the record, including her replies to PECO's Answer to the Amended Complaint, which were marked as Exhibits 2 and 7, and the attachments to her replies, which were marked as Exhibits 3 through 6. (*Id.* at 0016b-23b.)

PECO, represented by counsel, presented the testimony of two witnesses: Technician, who performed the January 2018 inspection of Petitioner's meter; and PECO's manager of the smart grid operations and technology group (Manager). (*Id.* at 0041b, 0059b-60b.) Technician testified that he worked for PECO for 12 years and "was trained as a high bill investigator," which involves searching "for foreign wiring, cross wiring, [and] meter mix ups," testing meters, and issuing high bill investigation field reports. (*Id.* at 0042b.) Technician explained what occurs during a high bill investigation and the procedures that were used to investigate Petitioner's meter. (*Id.* at 0044b-47b, 0055b-56b.) Technician testified that he performed "a partial appliance analysis" as a "full appliance analysis" was declined, and he was able to identify appliances that contributed to Petitioner's high usage and that, based on the passing load and idle tests performed, Petitioner's meter was accurate and functioning properly. (*Id.* at 0045b-48b.) According to Technician, it was "impossible" for Petitioner's meter to malfunction and then correct itself. (*Id.* at 0047b.) Technician also testified about the April 2018 inspection performed by a different technician, stating it showed that the meter was performing correctly and was consistent with his January 2018 inspection and report. (*Id.* at 0049b-50b.) On cross-examination, Technician explained the different types of tests performed on Petitioner's meter to determine the meter's accuracy and that all he could do was

7

offer a good faith credit because the meter was accurate. (*Id.* at 0054b-56b.) Technician indicated he did not execute a full appliance analysis, but performed a visual inspection to determine what appliances were present. (*Id.* at 0058b.)

Manager testified to the operation of PECO's smart grid system, specifically the two-way communication between the meter and PECO as required by Act 129 of 2008 (Act 129).[7] (*Id.* at 0061b-62b.) Manager explained that the meters, which are encrypted, send electrical usage information to PECO and PECO can send commands to the meter to, among other things, disconnect the meter, upgrade the firmware, and test the meter's security. (*Id.*) According to Manager, PECO cannot unilaterally change or alter the meter readings, the meters only register the energy that is consumed once an hour, and the meters do not interface with any appliances. (*Id.* at 0062b-63b, 0082b.) Manager further testified that "[w]hen [the] temperature drops, the usage increases considerably," and that when the temperature was below 50 degrees Fahrenheit, as it was during this period, there is considerably more usage at Petitioner's residence. (*Id.* at 0064b-65b.) Manager indicated that the meter tests, revealing that Petitioner's meter was 99.98% and 99.96% accurate, were within the thresholds for accuracy. (*Id.* at 0066b-67b.) On cross-examination, when asked about whether a meter could be hacked, Manager acknowledged that "anything is possible" but explained there was no evidence that this had occurred, and PECO encrypted the meters to avoid any outside interference. (*Id.* at 0070b-72b.) Manager indicated that meter multipliers were not used in residential meters, like the one found in Petitioner's home. (*Id.* at 0075b-76b, 0078b-80b, 0082b.) Finally, Manager explained that sometimes unexpected spikes in electricity usage can be the

---

[7] Act of October 15, 2008, P.L. 1529, No. 129. Act 129 amended various provisions of the Code and addressed the use of smart meter technology. *See* Section 2807(f), (g) of the Code, 66 Pa.C.S. § 2807(f), (g).

result of a malfunctioning appliance and that Petitioner's appliances, generally, could account for the changes in usage. (*Id.* at 0084b-86b.)

At the end of the testimony, Petitioner inquired about whether she would have an opportunity to submit additional comments or evidence after the hearing. The ALJ explained that everything had to be submitted at the hearing and Petitioner would not be able to submit anything else unless Petitioner moved to reopen the record, at which time Petitioner would have to be specific about what evidence Petitioner wanted to offer. (*Id.* at 0087b-90b.) The parties then moved for the admission of their exhibits. PECO objected to the admission of Petitioner's Exhibits 2 and 7, arguing that they were not evidence, but pleadings, and contained hearsay. (*Id.* at 0091b-93b.) The ALJ sustained the objection because "they are more pleadings rather than exhibits," and did not admit those documents into the evidentiary record. (*Id.* at 0094b.) The documents that had been attached to Exhibits 2 and 7 were admitted into the record as Petitioner's Exhibits 3-6. (*Id.* at 0094b-95b; R.R. at 39a-52a.) Following the hearing, Petitioner sent letters dated October 24 and 28, 2019, to the ALJ.[8]

### C. The ALJ's Initial Decision

On March 3, 2020, the ALJ issued the Initial Decision. Therein, the ALJ made the following procedural rulings. First, the ALJ denied Petitioner's request that the evidentiary ruling excluding Exhibits 2 and 7 because "the documents were pleadings [and] not actual exhibits" be reconsidered, explaining that Petitioner had "not provide[d] any legal reason as to why [the] initial ruling . . . was incorrect." (Initial Decision at 2 & n.1.) Second, the ALJ addressed multiple letters that Petitioner sent after the conclusion of the hearing (post-hearing correspondence),

---

[8] These documents are also subjects of the Application for Relief.

noting that Petitioner had been told at the hearing that if Petitioner wanted to submit further evidence, Petitioner would need to file a motion to reopen the record and provide specific reasons as to why the record should be reopened and what Petitioner would want to present. (*Id.* at 8; S.R.R. at 0089b-90b.) The ALJ explained that Petitioner's correspondence "d[id] not contain any specific request to reopen the record nor d[id] it contain what evidence [Petitioner] would wish to present" but "simply dispute[d] PECO's position in the case and the evidence that [PECO] presented at the hearing." (Initial Decision at 8.) Thus, the ALJ did not consider the post-hearing correspondence because Petitioner "failed to present any 'reason to believe that conditions of fact or of law have so changed as to require, or that the public interest requires, the reopening of the proceeding.'" (*Id.* (quoting Section 5.571(d) of the Commission's Regulations, 52 Pa. Code § 5.571(d)).)

The ALJ then addressed the merits of Petitioner's high bill dispute, on which Petitioner bore the burden of proof. While recognizing that there was an increase in Petitioner's usage "from the winter period of 2016-2017 to 2017-2018, it is clear that the electricity that [Petitioner] is using is within her energy usage potential." (*Id.* at 11.) Additionally, the ALJ noted that "temperatures were colder and there were more heating degree days[9] in the winter of 2017-2018 as compared to the winter of 2016-2017." (*Id.*) The ALJ also referenced the high bill investigations

---

[9] The Commission's Regulation at 52 Pa. Code § 61.1 defines degree day as "[a] unit used in estimating quantities of fuel and power consumption based on a daily ratio of consumption the mean temperature below 65ºF." Thus, heating degree days are "summations of negative differences between the mean daily temperature and the 65[-degree] base[.]" *Dziadas v. Pa. Pub. Util. Comm'n* (Pa. Cmwlth., No. 1951 C.D. 2010, filed Feb. 3, 2012), slip op. at 5 n.6 (alteration in original) (internal quotations omitted). Unreported opinions, while not precedential, may be cited for their persuasive value. Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b); Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

conducted by PECO, which found Petitioner's meter to be working properly and providing accurate readings. (*Id.*) In addressing the alleged security breach, the ALJ indicated there was no evidence of foreign wiring, tampering, or other irregularities and that Petitioner had not "allege[d] that there were any issues with the meter before or after the winter period of 2017-2018." (*Id.* at 11.) Further, the ALJ noted that PECO's witnesses testified that "a meter cannot malfunction and then correct itself" and that PECO cannot "alter or change the meter readings." (*Id.*) Based on this, the ALJ concluded Petitioner did not "me[e]t her burden of demonstrating that there were irregularities in her bills from PECO or that she was experiencing any safety or reliability issues at the [s]ervice [a]ddress" and dismissed the Amended Complaint. (*Id.*)

### D. Petitioner's Exceptions and PECO's Reply

Petitioner filed Exceptions to the ALJ's Initial Decision. (R.R. at 69a-75a.) Petitioner excepted to the facts that PECO's witnesses testified without PECO advising Petitioner beforehand and the ALJ's removal of Exhibits 2 and 7, which she acknowledges were pleadings, from the record based on PECO's objections. (*Id.* at 69a-70a.) Petitioner also excepted to the ALJ's findings of fact based on Technician's and Manager's testimony, arguing that had Petitioner been informed about the witnesses' testimony, Petitioner "would have been prepared to question the basis for the allocation of usage necessary to compute the 'total potential usage of 4,125 kWh.'" (*Id.* at 70a (quoting Initial Decision at 4).) Petitioner further argued that those witnesses' testimony were based on arbitrary assumptions about potential usage of appliances. Additionally, Petitioner argued that the courtesy that was extended based on Petitioner's claim that the usage was abnormal "is not factual." (*Id.* at 71a.) Finally, Petitioner challenged the refusal of the ALJ to consider

11

Petitioner's post-hearing correspondence, disputed PECO's evidence in general, and disputed the reliance on the heating degree day data regarding usage in particular. (*Id.* at 71a-74a.) Petitioner contended her evidence made out a prima facie case. (*Id.* at 74a.)

PECO responded, pointing out that Petitioner "d[id] not allege that the ALJ made an error of law" or committed an abuse of discretion but "except[ed] to the decision issued by [the] ALJ[] because [Petitioner] simply disagree[d] with the ALJ's decision and believe[d] [Petitioner] submitted adequate proof" that supports her position. (*Id.* at 80a.) PECO asserted that Petitioner was re-litigating the issues raised in both Complaints and at the hearing. (*Id.*) In addressing Petitioner's post-hearing correspondence, PECO argued that Petitioner did not follow the ALJ's instructions and never filed a motion to reopen the record to submit additional evidence. (*Id.*) Further, PECO stressed that the ALJ "provided [Petitioner] ample opportunity to present [] evidence, cross-examine PECO's witnesses[,] and present any objections to said evidence." (*Id.* at 81a.) Addressing the merits of Petitioner's dispute, PECO asserted that the ALJ's decision should be affirmed because PECO presented credible evidence regarding the high bill investigations conducted at Petitioner's residence and that its witnesses' testimony was consistent with documentary evidence. (*Id.* at 81a-82a.) Thus, based on the credible evidence presented by PECO, the ALJ "correctly determine[d] that [Petitioner] had not met her burden of proof." (*Id.* at 83a.)

### E. The Commission's Order and Opinion

On November 19, 2020, the Commission rendered its Order and Opinion. As a threshold matter, the Commission addressed Petitioner's arguments related to Exhibits 2 and 7, her replies to PECO's Answer and use of extra-record material in

12

her Exceptions. With respect to the exhibits, the Commission did not rely on or cite the ALJ's reasoning, but noted that PECO filed its Answer on September 6, 2019, making any reply from Petitioner due September 29, 2019. (Commission's Order and Opinion (Op.) at 6 (citing Section 5.63(a) of the Commission's Regulations, 52 Pa. Code § 5.63(a) ("replies to answers seeking affirmative relief . . . shall be filed with the Commission and served within 20 days after date of service of the answer")).) Because Petitioner did not file her replies until mid-October 2019, "well beyond the required due date," without proffering good cause for the late filing, the Commission declined to consider the replies. (Commission's Order and Op. at 6.) It further observed that the untimely replies were not entered on the record at the hearing based on PECO's objections and, as such, they were not "removed" from the record as Petitioner contended. (*Id.* at 20.) Addressing Petitioner's use of extra-record material that had been submitted after the hearing, the Commission stated that "parties cannot introduce new evidence at the exceptions stage," as doing so would violate the opposing party's due process rights, and the ALJ had provided reasons for why the later-submitted materials did not justify reopening the record. (*Id.* at 14.) Thus, the Commission rejected Petitioner's use of the extra-record materials in her Exceptions. (*Id.* at 15.)

The Commission then addressed Petitioner's Exceptions, finding no merit to Petitioner's challenge to the ALJ's findings of fact and evidentiary rulings. (*Id.* at 19-21.) The Commission found no merit in Petitioner's Exception based on an alleged violation of Sections 5.421 and 5.321(f) of the Commission's Regulations, 52 Pa. Code §§ 5.421, 5.321(f), regarding her not receiving advance notice of PECO's witnesses or a list of witnesses. It explained that the former regulation applied to the issuance of subpoenas and that the latter regulation, related to the

13

scope of discovery, did not require the provision of a witness list to an opposing party, although one could be sought through discovery. (*Id.* at 20-21.)

Addressing Petitioner's Exception related to her burden of proof, which she argued she had met, the Commission explained that to satisfy her burden of proof Petitioner "must prove[, by a preponderance of the evidence,] that there are incorrect charges on her bill or that PECO violated the Code, its tariff, or a Commission Regulation or Order." (*Id.* at 21.) While recognizing the increase in Petitioner's billed kWh usage, the Commission concluded that Petitioner's evidence "d[id] not effectively support her claim that the billed electric usage at the [s]ervice [a]ddress was inaccurate at any time, or that PECO violated the Code, its tariff, or a Commission Regulation or Order." (*Id.* at 22.) The Commission noted that, upon notice of the issue, PECO investigated Petitioner's high bill and meter when it sent two technicians to Petitioner's residence, and it credited PECO's evidence regarding the accuracy of Petitioner's meter, the inability of "a meter to malfunction and then correct itself," and the workings of the smart meter system, which did not allow PECO to alter any meter readings. (*Id.* at 22-23.) Based on the record, the Commission held there was nothing to reflect that PECO billed Petitioner incorrectly or violated the Code, its tariff, or a Commission order or Regulation. Finally, the Commission determined that the ALJ "properly weighed the evidence presented to conclude that [Petitioner] failed to carry the burden of proof on her [Amended] Complaint" and dismissed the Amended Complaint. (*Id.* at 23.) Accordingly, the Commission granted in part and denied in part Petitioner's Exceptions, adopted, as

modified, the ALJ's Initial Decision, and denied and dismissed Petitioner's high bill dispute. (*Id.* at 23-24.) Petitioner now petitions this Court for review.[10]

## II. DISCUSSION

### A. *Applications Before the Court*

In addition to Petitioner's appeal, Petitioner filed an Application for Relief to which the Commission filed a response and an Application to Strike. Petitioner seeks to have the Court consider Exhibits 2 and 7 and her post-hearing correspondence to the ALJ that, she argues, were improperly omitted or excluded from the record and the Commission's Certified List of Documents (Certified List). Petitioner argues that the post-hearing correspondence requested that relevant material be made a part of the record and was submitted per the ALJ's instructions given after the hearing which were not part of the transcript. (Petitioner's Supplemental (Suppl.) Brief (Br.) at 10-11.) Petitioner asserts that because the omitted documents were filed before the record closed on November 25, 2019, and were received and not returned, the ALJ should have exercised control over the documents and considered, not excluded, them. (*Id.* at 11-12.) Petitioner contends that because the documents were acted upon in the proceeding, in that they were excluded, they are "*ipso facto* on the record of the proceeding." (*Id.* at 12.) Petitioner asserts that the evidentiary record is required to "account for all that transpires in the adjudication of a claim[,]" that pleadings are permitted to be entered

---

[10] This Court's scope of review of the Commission's adjudication is limited to "determining whether the necessary findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether the Commission erred as a matter of law." *Hess v. Pa. Pub. Util. Comm'n*, 107 A.3d 246, 258 n.7 (Pa. Cmwlth. 2014). Substantial evidence "is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Phila. Gas Works v. Pa. Pub. Util. Comm'n*, 898 A.2d 671, 675 n.9 (Pa. Cmwlth. 2006).

into evidence, and, even if ruled inadmissible, "remain on the record of the proceedings." (*Id.* at 13.) Finally, Petitioner argues that PECO's objection to and the omission of the documents from the record "stands in opposition to the law that defines what constitutes the record for decision" and "any objection to the inclusion of [the documents] must be found unlawful." (*Id.* at 14.)

The Commission argues that the omitted documents were never a part of the evidentiary record and, therefore, were not improperly omitted from the Certified List. It maintains that Petitioner's attempt to introduce evidence after the conclusion of the hearing before the ALJ is improper, and, based on the Commission's Regulations, the ALJ was correct in excluding the materials. The Commission further argues that Petitioner has failed to identify the harm caused by the omission nor has Petitioner addressed what in the omitted documents was "new, novel[,] and critical to [Petitioner's] claims." (Commission's Suppl. Br. at 15.) The Commission states that "[f]or purposes of [a]ppellate review, that which is not part of the certified record does not exist." (*Id.* at 18 (citing *B.K. v. Dep't of Pub. Welfare*, 36 A.3d 649, 657 (Pa. Cmwlth. 2012)).) The Commission continues, stating

> [w]hile [Pennsylvania] Rule [of Appellate Procedure] 1951(b)[, Pa.R.A.P. 1951(b),] permits any items omitted from the record or misstated therein to be admitted or corrected upon stipulation by the parties or upon direction of the Court, this case [] does not involve a situation whereby information or evidence has been misstated in or omitted from the Certified List.

(*Id.*) Citing *Grubbs v. Pennsylvania Board of Probation and Parole*, 481 A.2d 1390, 1391 (Pa. Cmwlth. 1984), the Commission argues that the word "proceeding" in Pennsylvania Rule of Appellate Procedure 1951(a)(3), Pa.R.A.P. 1951(a)(3), "includes only documents and facts developed during an administrative hearing in the presence of the litigants and their counsel." (*Id.* at 20.) The Commission further

16

states "even if evidence is proffered during an administrative hearing, if its admissibility is not ruled upon by the presiding officer, it is not a part of the agency record." (*Id.* (citing *Humphrey v. Workmen's Comp. Appeal Bd. (Supermarket Serv.)*, 514 A.2d 246, 251 (Pa. Cmwlth. 1986)).) Thus, the Commission maintains that, because the post-hearing correspondence and Exhibits 2 and 7 are not part of the agency record, the Court cannot consider them in determining whether substantial evidence exists to support Petitioner's allegations against PECO. (*Id.*) Consistent with these arguments, the Commission filed its Application to Strike seeking to strike the portions of Petitioner's filings that reference extra-record material.

Petitioner filed a reply, asserting that, although the Petitioner's replies to PECO's Answer were not admitted into evidence, "they are nevertheless a part of the record of proceedings and do appear on the Certified List of Documents as 'Item 13 – Reply to Answer – Walden.'" (Petitioner's Reply to the Commission's Suppl. Br. at 2.) As such, Petitioner contends that the replies to PECO's Answer, which are Exhibits 2 and 7, were properly cited in her brief. (*Id.*) With respect to the post-hearing correspondence, Petitioner maintains that, in reliance on the ALJ's advisement after the hearing, Petitioner delivered the documents to the ALJ within the time allowed "obviating the need to file a request to reopen the record." (*Id.* at 3.) Petitioner asserts that counsel for PECO "misstated the fact regarding the timely submittal of the [Petitioner's interrogatories] that is evidenced by the [United States Postal Service] certified date of delivery that evidences otherwise." (*Id.*) Additionally, Petitioner argues that, pursuant to Rule 1951(a)(3), the record for appellate review includes "pleadings not in evidence, evidence, and proceedings before the government unit." (*Id.* at 4.) Petitioner asserts that the interrogatories

were part of the proceedings because they were discussed at the hearing and "PECO did not respond as regulation requires and the submittal of those documents after the hearing was in accord with the ALJ's advisement notwithstanding the fact that the ALJ omitted that fact from [the] decision." (*Id.*)  Thus, Petitioner submits that, "[p]ursuant to Rule 1951, pleadings are required to be included on the record [and] are subject to this Court's review." (*Id.* at 6.)

Pursuant to Rule 1951(a), the agency record in proceedings on a petition for review consists of:  "(1) [t]he order or other determination of the government unit sought to be reviewed[;] (2) [t]he findings or report on which such order or other determination is based[; and] (3) [t]he pleadings, evidence and proceedings before the government unit." Pa.R.A.P 1951(a).  The word "proceedings," as used in Rule 1951(a), includes **only** the documents and facts that were **developed during the administrative hearing** in the presence of the litigants and counsel. *Grubbs*, 481 A.2d at 1391.  Even if evidence or documents are mentioned in the proceedings, they must be **admitted** during the administrative hearing to be part of the record. *Id.* Evidence that is proffered, but the admissibility of which is not ruled on, is not part of the agency record. *See Humphrey*, 514 A.2d at 251.  This Court has stated

> [i]t should be well established by now that neither the [administrative agency] in its decision[-]making process, nor this Court in a review of that process, may consider **any matters not made a part of the record** when counsel and the litigants are present.  Whether or not such matters would be prejudicial to the [p]etitioner is irrelevant.  They simply cannot be considered.

*Grubbs*, 481 A.2d at 1391 (emphasis added).  Further, the Commission's Regulations also control what evidence can be admitted into the record.  Section 5.403(a) of the Commission's Regulations gives the presiding officer the authority to control the receipt of evidence.  52 Pa. Code § 5.403(a).

18

We begin with Exhibits 2 and 7, which were not admitted into evidence by the ALJ based on PECO's objection that they were pleadings, not evidence, and which the Commission rejected as being untimely filed without good cause pursuant to Section 5.63(a) of the Commission's Regulations, 52 Pa. Code § 5.63(a). As to the Commission's reasoning, the timeliness of Petitioner's replies was not raised by PECO at the hearing or cited by the ALJ as the basis for the non-admission of those documents. Because PECO did not raise this issue, Petitioner was not provided an opportunity to establish good cause for the untimeliness, which the Commission found lacking in its Order and Opinion. Other than citing a public policy that favors the adherence to the Commission's deadlines, the Commission did not provide authority for its sua sponte consideration of an issue not raised by PECO as a basis for the replies' non-admission. Accordingly, we will not consider that reason.

As to the ALJ's reason for not admitting the replies into the record based on the replies being pleadings and not evidence, such reason does not find support in the Commission's Regulations. While Section 5.403(a) of the Commission's Regulations gives the ALJ the authority to control the receipt of evidence, Section 5.405(b) specifically addresses pleadings as evidence. Section 5.405(b) provides that except in "noncontested proceeding[s]" or where facts are admitted by a party in an answer, "a pleading, or any part thereof[,] may not be considered as evidence of a fact other than that of filing thereof unless offered and received into evidence." *Id.* Thus, this provision contemplates that "a pleading, or any part thereof" may be considered evidence if "offered and received into evidence." 52 Pa. Code § 5.405(b). Thus, contrary to the ALJ's determination, the fact that the replies were pleadings did not exclude them from being evidence once they were offered into evidence, which occurred here. Accordingly, it was error not to admit Exhibits 2 and 7 as

19

evidence or not to include them in the record simply because they were pleadings, and Petitioner's Application for Relief as to those documents is granted and the Commission's corresponding Application to Strike is denied as to those documents.

However, this error does not require reversal because our review of Exhibits 2 and 7, as requested by Petitioner, and the record created before the ALJ reveals that the non-admission of Petitioner's replies was harmless error. An error is harmless if a party does not suffer prejudice as a result of the error. *Lake Adventure Cmty. Ass'n v. Dingman Twp. Zoning Hearing Bd.*, 72 A.3d 807, 809 (Pa. Cmwlth. 2013). As our Supreme Court has explained, "[t]he rationale behind the harmless error doctrine is judicial efficiency." *Interest of J.M.G.*, 229 A.3d 571, 581 (Pa. 2020). The doctrine "is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless." *Id.*

Petitioner argues that the "[r]eplies are relevant and material to the issues the exhibits prove, exemplify and support and they defend the matters sworn to in Petitioner's Amended Complaint . . . that [PECO's] Answers den[ied]." (Petitioner's Br. at 28.) The Commission asserts that any error in the non-admission of these Exhibits was harmless and, therefore, the Order and Opinion should be affirmed. (Commission's Suppl. Br. at 15-17.)

Exhibit 2 consists of a cover letter dated October 13, 2019, Petitioner's reply to PECO's Answer to the Amended Complaint, and four attached documents. In the reply, Petitioner: argued that PECO's Answer misstated facts; challenged PECO's "blanket denial of '. . . all material allegations of fact'"; and referenced the February 6, 2018 letter challenging the results of PECO's January 23, 2018 inspection and inquiring about meter multipliers, the March 11, 2018 Notice of Formal Dispute

20

doing the same, and PECO's lack of responses thereto. (R.R. at 26a-28a.) Petitioner further disputed certain facts asserted in PECO's Answer, such as her declining an appliance analysis, challenged PECO's assertion that the load tests using her space heater established the accuracy of the meter, and maintained that the BCS results did not address all of the issues Petitioner raised. (*Id.* at 28a-31a.) Petitioner questioned PECO's ability to send commands to the meter and whether the "false readings [of Petitioner's] meter" was related to an "erroneous command or system glitch." (*Id.* at 31a-32a.) Exhibit 7 is a cover letter dated October 15, 2019,[11] and an updated page 6 of the previously sent reply. Therein, Petitioner asserted another challenge to the adequacy of the load test to establish the accuracy of the meter, citing her own actions in shutting off her main circuit breaker over two nights in February 2018, which allegedly resulted, respectively, in the meter increasing from 32,221 to 32,231, and 32,261 to 32,267. (*Id.* at 34a.)

While Petitioner argues that the replies supported or proved the documents attached to Exhibit 2, those documents were, themselves, admitted into evidence by the ALJ as Petitioner's Exhibits 3-6. Therefore, their contents were a part of the record considered by the ALJ and the Commission and certified to this Court. Thus, there was no prejudice to Petitioner to the extent those documents were not also admitted as a part of Exhibit 2. Further, Petitioner had the opportunity to raise, and did raise, the arguments and issues from her replies at the hearing before the ALJ. Petitioner testified before the ALJ in support of her Amended Complaint, which Petitioner asserts the replies "defend[ed]." (Petitioner's Br. at 28.) Petitioner explained the history of the dispute, PECO's investigations, and her reasons for believing why those investigations were insufficient to establish the meter's

---

[11] Although the letter is dated October 15, 2016, it specifically references the response sent on October 13, 2019. Thus, the date appears to be a typographical error.

accuracy, including her turning everything off for two nights and the meter still showing 10 kWh of usage. Petitioner challenged PECO's arguments and evidence, including the adequacy of load tests, the appliance analysis, the ability of PECO to communicate with and/or manipulate the meter, and the use of meter multipliers. Because Petitioner presented the arguments and facts contained in the replies through testimony and the admission of Exhibits 3-6, they were in the record for the ALJ's consideration notwithstanding that the replies themselves were not. Accordingly, we discern no prejudice to Petitioner in the non-admission of the replies.

With respect to Petitioner's post-hearing correspondence to the ALJ, which were the October 24 and 28 letters relating to PECO's Answers to her Interrogatories, these materials were not admitted because Petitioner failed to file a motion to reopen the record and explain specifically what would be presented at an additional hearing, as the ALJ had instructed during the hearing. (Initial Decision at 8; S.R.R. at 0089b-90b.) The ALJ explained that the correspondence "simply dispute[d] PECO's position in the case and the evidence that they presented at the hearing and d[id] not indicate that there would be any new evidence which [Petitioner] would provide." (Initial Decision at 8.) Petitioner concedes that she did not file a motion to reopen the record, contending that the ALJ later, off the record, advised Petitioner that she could submit additional evidence after the hearing. (Petitioner's Reply Br. at 12-13.) However, the official transcript of the proceedings reflects that the ALJ gave Petitioner the opposite instructions, (S.R.R. at 0089b-90b), which is confirmed by the ALJ's Initial Decision that specifically references those instructions, (Initial Decision at 8). "For purposes of appellate review, that which is not part of the certified record does not exist." *B.K.*, 36 A.3d at 657. As the October

22

24 and 28, 2019 materials were not presented and admitted into evidence at the October 23, 2019 hearing, at which both Petitioner and PECO were present, or at a subsequent hearing based upon a granted motion to reopen the record, they are not a part of the "proceedings" or the record. *Humphrey*, 514 A.2d at 251; *Grubbs*, 481 A.2d at 1391. For these reasons, we deny Petitioner's Application for Relief as to the post-hearing correspondence and grant the Commission's corresponding Application to Strike as to those documents. Thus, we will not consider those parts of Petitioner's briefs and reproduced record that reference the omitted material.[12]

### B. High Bill Dispute

We turn now to Petitioner's high bill dispute.[13] Petitioner's challenge focuses on how PECO's arguments and evidence were insufficient to establish that she was not overcharged. In contrast, Petitioner maintains that she met her burden of proof through her evidence. Petitioner asserts that the heating degree day data "does not support the conclusion that colder temperatures caused the abnormally high bills in dispute." (Petitioner's Br. at 20.) Petitioner contends that there is no correlation between the colder temperatures and the amount of kWh usage billed and that, if such correlation existed, her gas usage would have increased during that period, and it did not. (*Id.* at 20-22.) Petitioner also contends that her prior billings evidence an anomaly with respect to the 2017-2018 period and that the Commission's decision relied on "falsely concluded evidence to the detriment of Petitioner's right to a fair hearing of the issues." (*Id.* at 23.) Petitioner also challenges PECO's reliance on Petitioner's potential energy usage, arguing that PECO used arbitrary assumptions

---

[12] Even if those materials were considered, a review thereof reveals that they, too, would not change the result where the additional information was not inconsistent with the evidence presented and accepted by the ALJ.

[13] We have reorganized Petitioner's argument for ease of discussion.

23

to "calculate potential energy usage that billing history contradicts." (*Id.* at 24.) Petitioner asserts that "[a] 1500[-]watt space heater that is clocked at 1494 watts registers 1.5 [kWh] when used for [1] hour (1494 x 1 hour divided by 1,000); clocked at 1080 watts it registers 1.08 [kWh] when used for [1] hour." (*Id.*) Thus, this arbitrary assignment of potential energy "prejudices the result to favor PECO" and is not a fact upon which a ruling can be based. (*Id.* at 25.)

The Commission responds that its decision is supported by substantial evidence and is consistent with the law and, therefore, is entitled to deference. Specifically, the Commission acknowledged that there was an increase in Petitioner's usage during the disputed period but maintains that PECO rebutted Petitioner's evidence through testimony and empirical evidence showing that PECO's equipment was not the cause of the high bills. (Commission's Br. at 19-20.) The Commission asserts it properly weighed and credited the evidence presented by PECO, which constitutes substantial evidence to support the Order and Opinion, and it is not for this Court to reweigh the evidence and substitute its judgment for that of the Commission. According to the Commission, Petitioner's arguments are based on speculation and conjecture, which are insufficient to support her Amended Complaint. (*Id.* at 21.)

Pursuant to Section 332(a) of the Code, 66 Pa.C.S. § 332(a), Petitioner, as the proponent of the Amended Complaint, bears the burden of proof. This Court has stated that, in high bill disputes, "even where the utility can present evidence that it has tested the customer's meter and found it to be accurate, the customer may, nonetheless, prove [her] case by circumstantial evidence which would support a finding that the metered usage exceeded the actual usage." *Milkie v. Pa. Pub. Util. Comm'n*, 768 A.2d 1217, 1220 (Pa. Cmwlth. 2001); *see also Waldron v. Phila. Elec.*

24

*Co.*, 54 Pa. PUC 98, 1980 WL 140964 (1980). This is referred to as the *Waldron* rule. If the complainant makes out a prima facie case, "the burden of going forward shifts to the utility, but the ultimate burden of persuasion remains with the complainant." *Milkie*, 768 A.2d at 1220. "The Commission must measure the weight and credibility of all the evidence," and merely "because the ratepayer has presented a prima facie case does not obligate the Commission to credit this evidence or to give it any special weight."[14] *Id.* "If the utility presents evidence found to be of co-equal (or greater) weight with that of the complainant, the complainant will not have met [her] burden of proof," and the *Waldron* rule is inapplicable. *Id.*

In the case sub judice, we discern no error in the Commission's decision. It is undisputed that Petitioner's electricity bills were high during the November 2017 through April 2018 period based on her historical billing, which the Commission recognized in its decision. However, PECO presented evidence that, if credited, would constitute substantial evidence to support the conclusions that there was no problem with Petitioner's meter and that Petitioner's bills were calculated correctly. Technician testified as to his investigation of Petitioner's high bill complaint and that, based on his investigation, Petitioner's meter was accurate and there was nothing to indicate any tampering or problems with the meter. (S.R.R. at 0046b-47b.) Technician observed that if the meter was malfunctioning, it was "impossible" for the meter to later correct itself. (*Id.* at 0047b-48b.) Technician further testified that, given the size of Petitioner's home and type and number of appliances, the usage readings were not unreasonable. (*Id.*) Manager testified to how the two-way communication works between PECO and the meters, as well as to the fact that PECO cannot unilaterally change or alter the meter readings, as it appears this is

---

[14] "The Commission, not the ALJ, is the ultimate fact-finder in formal complaint proceedings; it weighs and resolves conflicts in the testimony." *Milkie*, 768 A.2d at 1220 n.7.

Petitioner's contention. (*Id.* at 0061b-62b.) Manager also testified to the correlation between temperature drops and usage rates concluding that as the temperature drops, usage rates increase. (*Id.* at 0063-64b.) Petitioner did not present evidence that rebutted PECO's evidence. The Commission weighed the evidence presented and concluded that, as much of Petitioner's assertions were based on speculation and conjecture, Petitioner did not present evidence that was "substantial or more convincing, even by the smallest amount, than the evidence presented by PECO." (*See* Commission's Order and Op. at 21.) "Here, the Commission found [Petitioner's] evidence to be of little weight" when compared to PECO's evidence, which constitutes substantial evidence to support the Commission's decision. Evidentiary weight decisions are within "the sole province of the Commission as fact-finder, and we will not disturb them on appeal." *Milkie*, 768 A.2d at 1220-21. As such, there was no error in the Commission's decision to dismiss the Amended Complaint based on its conclusion that Petitioner did not meet her burden of persuasion that PECO incorrectly billed her or that PECO violated the Code, its tariff, or the Commission's Regulations or orders. *Id.* at 1220.

Petitioner also argues that she had the right to have a prehearing conference, of which she was not apprised, and that the ALJ's failure to hold a prehearing conference affected her substantive right to due process. Petitioner maintains that not holding a prehearing conference "denies a pro se participant the instruction that can be vital to the effective and fair prosecution of her claim." (Petitioner's Br. at 17, 19 (citing Section 333 of the Code, 66 Pa.C.S. § 333; 52 Pa. Code §§ 1.2(c), 5.222).)[15] The Commission responds that it provided Petitioner with due process by

---

[15] Petitioner also argues that her due process rights were violated when the ALJ refused to consider her replies to PECO's Answers or reopen the record to allow PECO's Answers to **(Footnote continued on next page…)**

giving her a meaningful opportunity to be heard in a meaningful manner. (Commission's Br. at 37.) According to the Commission, the decision to hold a prehearing conference in billing disputes is at the discretion of the presiding officer, and the ALJ's decision to not hold a prehearing conference was not an abuse of discretion and did not violate the Code or Commission Regulations. (*Id.* at 37, 41.)

Reviewing the Code and the Commission's Regulations, we discern no violation of Petitioner's due process rights by the absence of a prehearing conference. As an administrative agency, the Commission is required to provide due process to parties appearing before it. *Schneider v. Pa. Pub. Util. Comm'n*, 479 A.2d 10, 15 (Pa. Cmwlth. 1984). Due process is satisfied when parties are afforded notice and the opportunity to be heard. *Id.* To that end, the Commission is required to fix the time and place for a hearing on a complaint and to serve notice upon the parties in interest. Section 703(a), (b) of the Code, 66 Pa.C.S. § 703(a), (b). Once a hearing is scheduled and the parties notified, it is incumbent upon the parties to appear and participate in the hearing. The decision to hold a prehearing conference is within the discretion of the presiding officer on "his [or her] own motion or at the request of the party to the proceeding" and "at least one prehearing conference" is **required** only "where the issues are complex or where it appears likely that the hearing will last a considerable period of time." 66 Pa.C.S. § 333(a). While the general policy may be to arrange for prehearing conferences so as to "expedite the orderly conduct and disposition of the proceedings and to serve the ends of justice and the public interest," the Commission's Regulations state only that a presiding officer "**may** direct that a prehearing conference be held." 52 Pa. Code § 5.222(a) (emphasis added). This is consistent with Section 333(a) of the Code in that a

Petitioner's Interrogatories into the record. We addressed Petitioner's contentions regarding her replies and PECO's Answers previously and do not address them again.

27

prehearing conference is necessary to expedite the proceedings in matters where the issues are complex or where the hearing will be lengthy.

Here, Petitioner's Amended Complaint involved a residential billing dispute, a matter unlikely to have issues that were "complex" or would require a hearing that would "last a considerable period of time." 66 Pa.C.S. § 333(a). Neither Petitioner nor PECO requested to have a prehearing conference in this matter. While Petitioner argues she was not personally advised of the potential availability of a prehearing conference, the Commission's Regulations set forth that the ability to request such conferences and a pro se party's lack of understanding or knowledge of the law or procedural rules does not excuse a party's actions that may be to the party's detriment. *Finney v. Unemployment Comp. Bd. of Rev.*, 472 A.2d 752, 753-54 (Pa. Cmwlth. 1984). Under these circumstances, no prehearing conference was required, *id.*, and there was no "waiver" of a "requirement" that "adversely affect[ed] a substantive right of" Petitioner, 52 Pa. Code § 1.2(c).[16] Petitioner's Amended Complaint was duly scheduled for a hearing, and, after a continuance, the hearing was held on October 23, 2019. There, Petitioner was able to introduce exhibits, testify, cross-examine PECO's witnesses, and argue why her evidence should be accepted over PECO's. In short, Petitioner received notice and an opportunity to be heard on her Amended Complaint, and, therefore, we discern no due process violations by the ALJ or the Commission.

---

[16] This Regulation states "[t]he Commission or presiding officer at any stage of an action or proceeding may waive a requirement of this subpart when necessary or appropriate, if the waiver does not adversely affect a substantive right of a party." 52 Pa. Code § 1.2(c).

28

## III. CONCLUSION

Based on the foregoing, we grant in part and deny in part Petitioner's Application for Relief and grant in part and deny in part the Commission's Application to Strike. Additionally, we discern no due process violation or error in the Commission's findings that Petitioner did not meet her burden of showing that PECO improperly billed Petitioner for the November 2017 through April 2018 period or violated the Code, its tariff, or the Commission's Regulations or orders based on the Commission's evidentiary weight determinations. Therefore, we affirm.

 

 

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eileen Walden,                                    :
                          Petitioner        :
                                         :
                  v.        :   No. 1335 C.D. 2020
                                         :
Public Utility Commission,                        :
                      Respondent        :

## O R D E R

**NOW**, April 18, 2022, Eileen Walden's (Petitioner) Application for Relief is **GRANTED** as to Exhibits 2 and 7 and is otherwise **DENIED**, and the Public Utility Commission's (Commission) Application to Strike is **DENIED** as to Exhibits 2 and 7 and is otherwise **GRANTED**. The November 19, 2020 Order and Opinion of the Commission denying Petitioner's Exceptions, adopting the Administrative Law Judge's Initial Decision as modified, and dismissing Petitioner's Amended Formal Complaint is **AFFIRMED**.

                                                      _____

                                                  **RENÉE COHN JUBELIRER,** Judge